_____

No. 95-3270
_____

Lion Oil Company, Inc.,            *
                                   *
          Appellant,               *
                                   *    Appeal from the United States
     v.                            *    District Court for the
                                   *    Western District of Arkansas.
Tosco Corporation,                 *
                                   *
          Appellee.                *
_____

            Submitted:  May 13, 1996

               Filed:  July 19, 1996
_____

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     WOLLMAN, Circuit Judge.
_____

WOLLMAN, Circuit Judge.

     Lion Oil Company (Lion Oil) appeals the district court's[1] grant of
judgment on the pleadings to Tosco Corporation (Tosco) denying Lion Oil's
claim that Tosco indemnify it for costs associated with the cleanup of
property located on an oil refinery site pursuant to the Comprehensive
Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601
et seq. (CERCLA).  We affirm.

**I.**

     Tosco operated an oil refinery located on approximately 385 acres
near El Dorado, Arkansas, from 1972 to 1985.  To handle hazardous materials
generated during this period, Tosco constructed

_____

[1]The Honorable Harry F. Barnes, United States District Judge
for the Western District of Arkansas.

two hazardous waste management units (HWMUs) regulated pursuant to the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901 et seq., and several solid waste management units (SWMUs). On March 22, 1985, Lion Oil purchased the refinery from Tosco.[2] Section 2.8(d) of the Asset Purchase and Sale Agreement (the Agreement) entered into by the parties on that same date specifically provided that:

> Tosco hereby agrees to indemnify and hold harmless [Lion Oil] . . . for any and all (1) civil, legal and administrative costs; (2) fines and penalties; (3) response, remedial and clean-up costs, and (4) other costs or liability arising from any sudden or non-sudden harm to the environment or public health resulting from actions of Tosco prior to the Closing Date. . . . Costs which result from harm inflicted or discovered after the Closing Date, but which are the consequence of actions taken by Tosco prior to this date, shall be indemnified by Tosco.

> The clean-up costs which Tosco agrees to indemnify include, but are not limited to, all studies, site assessments, and any and all other efforts taken to determine the extent of harm to public health or the environment and/or to identify possible remedial alternatives that could ameliorate such harm. Clean-up costs include costs incurred directly by [Lion Oil] or by employees, agents, or contractors hired by [Lion Oil].

> . . .

> Under this clause, [Lion Oil] shall be indemnified for all liability and costs incurred under common law (federal or state) or existing local, state or federal statutes that protect public health and/or the environment, including but not limited to, the following federal statutes: the Comprehensive Environmental Response, Compensation and Liability Act of 1980 42 U.S.C. Sec. 9601-9657[] . . . .

> The liability of Tosco pursuant to this Section 2.8 (d) shall expire at the end of four (4) years after Date of Closing and shall not exceed a total of $1,000,000 in the aggregate. . . .

---

[2]Lion Oil was known as XYZ Inc. at the time of the transaction.

In August 1986, the parties executed an Amendment and Release (the Release). In exchange for Tosco's agreement to accept at a discount prepayment by Lion Oil of Lion Oil's remaining note obligation for the purchase price, the Release provided that:

> Lion [Oil] hereby extinguishes, discharges, releases and abandons any and all rights and claims against Tosco which it has or may have pursuant to the provisions of subsection 2.8(d) of the March 22 Agreement, or to the extent any such claims would be covered by the provisions of said subsection 2.8(d) even though also potentially covered within the general indemnification provisions of subsection 2.8(a), . . . whether now existing or arising in the future, at common law, or in equity, or created by any rule of law, regulatory order, statute or otherwise, and whether known or unknown.

In November 1988, Lion Oil decided to close the two HWMUs and filed for a RCRA post closure permit. The permit, which was approved in September 1990, required Lion Oil to conduct post-closure maintenance and monitoring of the HWMUs. In addition, the permit required Lion Oil to investigate and correct any potential leakage of hazardous materials from the SWMUs, in violation of CERCLA. A preliminary investigation disclosed potential releases of hazardous waste from approximately eighteen SWMUs, some of which had been constructed by Tosco. Lion Oil estimates that it may cost as much as $30,000,000 to bring the SWMUs into compliance with CERCLA.

In April 1994, Lion Oil brought suit against Tosco, seeking contribution under CERCLA for the clean-up costs of the property. In May 1995, Tosco filed a motion for judgment on the pleadings, which the district court granted.

## II.

Lion Oil contends that the district court erred in concluding that the Agreement and the Release combined to constitute a general

release of Tosco's CERCLA liability.  Lion Oil alleges that the district court should have allowed the admission of extrinsic evidence to demonstrate the parties' actual intent in drafting the documents.

We review de novo the district court's grant of a motion for judgment on the pleadings.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  Judgment on the pleadings is appropriate if the moving party clearly establishes that there are no material issues of fact and that he is entitled to judgment as a matter of law.  National Car Rental v. Computer Associates, 991 F.2d 426, 428 (8th Cir.), cert. denied, 114 S. Ct. 176 (1993).  Under this strict standard, we accept as true all facts pled by the non-moving party and draw all reasonable inferences from the pleadings in his favor.  Id.

CERCLA provides that a former owner or operator of a facility is jointly and severally liable for cleanup associated with hazardous waste sites.  42 U.S.C. § 9607(a).  CERCLA does, however, permit one party to insure, hold harmless, or indemnify another party for liability under the statute.  § 9607(e); see also Fisher Dev. Co. v. Boise Cascade Corp., 37 F.3d 104, 107 (3d Cir. 1994) (parties may allocate among themselves financial burden for cleaning up hazardous waste site under CERCLA).  Courts will enforce a contract allocating CERCLA liability when "the provisions [of the contract] evince a clear and unmistakable intent of the parties to do so."  Keywell Corp. v. Weinstein, 33 F.3d 159, 165 (2d Cir. 1994).

Lion Oil contends that the contracts are ambiguous and that extrinsic evidence should therefore have been admitted to show the true intention of the parties.  Specifically, Lion Oil seeks to offer evidence to show that Section 2.8(d) was meant to cover only the two HWMUs and was not a general limitation on potential CERCLA liability for the SWMUs.

Under Arkansas law, which the parties agree governs the contracts, the language contained in the contract is the best evidence of the parties' intentions. First Nat'l Bank v. Griffin, 832 S.W.2d 816, 818-19 (Ark. 1992), cert. denied, 113 S. Ct. 1280 (1993). Thus, we first look to the contract itself to determine if it is ambiguous -- not to extrinsic evidence offered to contradict the plain meaning of the contract. Id.

The district court found that "[t]he Purchase Agreement and the Release are clear, unequivocal and unambiguous in their allocation of Tosco's liability and its release therefrom." We agree that the plain language contained in the contracts compels such a result. The Agreement contained a broad indemnity provision that encompassed environmental harm caused by Tosco. Indeed, Section 2.8(d) specifically referred to CERCLA. The Release absolves Tosco from all obligations under Section 2.8(d). In these circumstances, the Agreement and Release unequivocally combine to allocate to Lion Oil any potential liability arising under CERCLA. The parol evidence rule prohibits the admission of extrinsic evidence to alter these otherwise unambiguous contracts. Griffin, 832 S.W.2d at 818-20; see also Rainey v. Travis, 850 S.W.2d 839, 840 (Ark. 1993) (extrinsic evidence not admissible when agreement is unambiguous on its face).

We note that this is not a case in which an unsophisticated party hastily entered into a contract. It is clear that Lion Oil was aware that the purchase of an oil refinery involved a risk of significant potential environmental liability, as exhibited in the detailed provisions of the Agreement. As the district court recognized, "The fact that hindsight may have proven the Agreement to be a bad business decision for Lion Oil does not negate its validity."

The judgment is affirmed.

-5-

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.