In the matter of Evelyn J.
MATTERA, Debtor.

Bankruptcy No. 89–03436.

United States Bankruptcy Court,
D. New Jersey.

Jan. 7, 1997.

Andrew Vazquez–Schroedinger, David Paul Daniels, P.C., Camden, NJ, for Debtor.

James E. Clubb, Jr., Ocean City, MD, for Council of Unit Owners, Ocean High, Inc.

*OPINION ON DEBTOR'S*

*MOTION TO REOPEN CASE*

JUDITH H. WIZMUR, Bankruptcy Judge.

On debtor's motion to reopen her completed Chapter 13 case, we are called upon to determine the dischargeability of time-share assessments levied after debtor was issued her Chapter 13 discharge, where the debtor's plan provided for the surrender of her time-share interest, and where the debtor made no use of the time-share following the filing of the petition.

**FACTS**

Debtor Evelyn J. Mattera filed a petition under Chapter 13 of the Bankruptcy Code on May 4, 1989. Her proposed Chapter 13 plan reflected an intention to surrender a two week time-share interest she held in Ocean High Condominiums, Ocean City, Maryland. She listed Berkley Federal Savings of Newark, New Jersey as the secured lienholder on this interest. The value of debtor's interest was noted on the schedules as $20,000 with the secured claim of Berkley Federal noted as $20,000. Ocean High Condominium Associates was also included as a secured creditor. The extent of the Condominium Associates's claim was not listed. Notice of the filing, the proposed plan and the scheduling for the case was sent to both creditors on May 25, 1989. Debtor's plan was confirmed on May 7, 1990 without objection. After all payments under the plan had been completed, debtor received a discharge on April 12, 1993, and her case was closed on April 14, 1993.

Debtor's motion to reopen her case was filed on November 14, 1995, in response to a judgment entered in the District Court of Maryland for Worcester County, under Case No. 0204–0000930–95, in favor of the Council of Unit Owners—Ocean High, Inc.[1] for unpaid condominium assessments that had accrued subsequent to the date of debtor's discharge. The judgment covers assessments for the period of January 1, 1994 to the present. Debtor asserts that she filed an answer to the complaint, raising the defense of her earlier bankruptcy, but did not attend the hearing. A judgment of default was entered on September 20, 1995 in the amount of $2,255.90 plus fees and costs.

By her motion, debtor seeks to vacate this judgment, asserting (1) that she had intended to surrender this property pursuant to her confirmed Chapter 13 Plan, (2) that her discharge terminated any relationship between Ocean High and herself, and (3) that the state court judgment violated 11 U.S.C. § 524. Debtor certifies that she did not occupy or use the time-share unit following the filing of her bankruptcy petition. Although she made no payments to Berkley Federal following the filing, she indicates that the bank's records now reflect a zero balance due from her, with no indication as to whether the obligation was assigned to a third party or charged off.

Debtor maintains that any recourse for unpaid post-petition assessments should be limited to a lien on the time-share unit, and should not be imposed as a personal obligation against her following her Chapter 13 discharge. She contends that post-petition assessments arising out of a pre-petition contract are discharged because they may be categorized as a contingent, unmatured liability that falls within the broad definition of a "claim" under the Bankruptcy Code. Debtor complains that she "has completed her obligations in her Chapter 13 filing and ... has sought a 'fresh start' [but] has now been saddled with a judgment for an obligation [from] which she has gained no benefit." Debtor's Letter Brief at 5.

In response, Ocean High acknowledges debtor's bankruptcy filing and debtor's proposal to surrender her interest in the condominium pursuant to her Plan. Ocean High contends, however, that there is no indication in the Plan as to whom the interest was to have been surrendered, and that as of this date, there is no evidence that a surrender was actually accomplished. A search of the Worcester County, Maryland, Land Records shows that title to the time-share remains in

1. We assume that Ocean High Condominium Associates and the Council of Unit Owners refer to the same party, and are designated interchangeably in this opinion as Ocean High.

the debtor's name.[2] Ocean High contends that debtor's discharge is limited to pre-petition assessments. Since she is still the record owner of the time-share interest, she should remain obligated to pay the outstanding post-discharge assessments.

According to Ocean High, the agreement to pay dues contained in the deed and the condominium declaration is not an executory contract that could have been rejected by the trustee, but rather a covenant that runs with the land. Liability for post-petition assessments thus attaches to the owner of the property, and as a "recordation" state, the state of Maryland considers the record owner to be the rightful owner of the property in question. Accordingly, Ocean High argues that its post-petition assessments do not constitute a pre-petition "claim" for purposes of debtor's bankruptcy, and that as the current record owner, debtor is liable for the post-petition assessments. Moreover, Ocean High questions our jurisdiction to resolve this matter as debtor's case is now closed.

## DISCUSSION

### I.

■ We agree with Ocean High that after a bankruptcy case is closed, the bankruptcy court loses jurisdiction to resolve issues arising between parties to the bankruptcy. However, Ocean High's challenge to our jurisdiction in this matter fails to take into account the express authority granted the court under 11 U.S.C. § 350(b). Section 350(b) provides that a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *See also* Fed. R.Bankr.P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."). " 'The right to reopen the case depends upon the circumstances of the individual case and the decision whether to reopen is committed to the court's discretion.' " *In re Winebrenner,* 170 B.R. 878, 881 (Bankr.E.D.Va.1994)

(quoting *In re Carter,* 156 B.R. 768, 770 (Bankr.E.D.Va.1993)). *See also Judd v. Wolfe,* 78 F.3d 110, 116 (3d Cir.1996) (decisions to reopen are reviewed under an abuse of discretion standard); *In re Figlio,* 193 B.R. 420, 424 (Bankr.D.N.J.1996) ("The decision to reopen the case is within the broad discretion of the bankruptcy court."). Debtor's motion here seeks relief from a post-petition claim that she alleges was discharged as an in personam claim against her upon completion of her Chapter 13 plan. We must exercise our discretion to reopen the case to resolve this issue, and will grant debtor's motion to reopen.

### II.

■ The issue of whether or not post-petition condominium or time-share common-area maintenance fees or assessments may be discharged by a debtor as a pre-petition obligation has been debated in the case law. The dispute centers around the proper reach of the definition of a "claim" under the Bankruptcy Code. Three lines of thought have evolved addressing the issue.

Following the Seventh Circuit's decision in *In re Rosteck,* 899 F.2d 694, 696 (7th Cir. 1990), one line of cases holds that post-petition condominium or time-share assessments are dischargeable because the debt due from the debtor to the association arose prior to the filing of the petition. The *Rosteck* court determined that although the obligation due from the debtor at filing was not fixed or matured, and was contingent on future ownership, the liability would be discharged as a "claim" under the definitional structure of the Bankruptcy Code. 11 U.S.C. § 101(5). The term "claim" is defined in the Code as a right to payment, whether or not such right is liquidated, unliquidated, fixed, contingent, matured or unmatured. *Id.*

Other courts have followed *Rosteck,* or have independently reached the same conclusion.[3] *See, e.g., In re Elias,* 98 B.R. 332, 337

---

**2.** Debtor had acquired Time Interval Nos. 35 and 5 in Condominium Unit No. C–22 by Warranty Deed on June 10, 1984.

**3.** In New Jersey, one state court has also decided this issue in favor of the *Rosteck* rationale. *See*

*Alexandria at Hillsborough Condo. Ass'n, Inc. v. Cichowicz,* 262 N.J.Super. 65, 71, 619 A.2d 1047 (Law Div.1992) ("Where there is no post-petition benefit to the bankrupt debtor, there is no personal liability for post-petition condominium as-

(N.D.Ill.1989) (assessments that accrue post-petition but arise from a pre-petition contract are "debts"); *In re Lamb*, 171 B.R. 52, 55 (Bankr.N.D.Ohio 1994) (the contractual obligation to pay the assessments existed pre-petition and was thus a contingent claim subject to discharge); *In re Garcia*, 168 B.R. 320 (Bankr.E.D.Mich.1993) (fees are subject to discharge as pre-petition debt subject to debtor's exercise of statutory right to redeem); *In re Wasp*, 137 B.R. 71, 72 (Bankr. M.D.Fla.1992) ("Any Association fees coming due after Debtors' filing of their bankruptcy petition were no more than unmatured portions of their original liability to the Association."). *See also In re Affeldt*, 164 B.R. 628, 631 (Bankr.D.Minn.1994), *aff'd on other grounds* 60 F.3d 1292 (8th Cir.1995) (district court follows *Rosteck* but circuit declines to adopt either *Rosteck* or *Rosenfeld* based upon record presented).[4]

A second line of cases, most notably the Fourth Circuit's decision in *In re Rosenfeld*, 23 F.3d 833, 837 (4th Cir.), *cert. denied —* U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131, *reh'g denied —* U.S. ——, 115 S.Ct. 622, 130 L.Ed.2d 530 (1994), rejects the conclusion that the assessments are dischargeable as pre-petition debts, concluding instead that an association has no claim against the debtor until each assessment becomes due. *Rosenfeld* focused on Virginia state law, under which a person is responsible for payment of assessments during the period of ownership, and on association documents which stated that the obligation to pay assessments is "a covenant running with the land and binds and inures to the benefit of all present and future owners." *Id.* The obligation is "a function of owning the land with which the covenant runs", and does not arise "from a pre-petition contractual obligation." *Id.*[5]

The court concluded that the association's right to payment for the common expenses did not arise until post-petition, and is therefore not discharged. *Id.* at 838.

Other cases reaching the *Rosenfeld* conclusion include: *In re Whitten*, 192 B.R. 10 (Bankr.D.Mass.1996) (with reference to state law, court concludes that common area fees are a covenant running with the land); *In re Beeter*, 173 B.R. 108, 122 (Bankr.W.D.Tex. 1994) ("each new month's ownership carries with it a new personal liability, arising out of the equitable servitude that burdens that ownership. As such, the liability does not arise 'as of' the day the debtor acquires the property, but 'as a result of' the fact that, on the first of any given month, the debtor is the current owner of the property. The assessments, then, are not 'rooted in the pre-bankruptcy past' but rather are rooted in the estate in property itself."); *In re Gonzalo*, 169 B.R. 13, 16 (Bankr.E.D.N.Y.1994) (ownership interest is inseparable from inherent obligation to pay common charges); *In re Raymond*, 129 B.R. 354 (Bankr.S.D.N.Y. 1991) (unit owner's liability for assessments ends only with the termination of the ownership interest).

A third line of cases, sometimes criticized as "result oriented decisions driven by equity,"[6] hold that post-petition circumstances may relieve a debtor of liability for post-petition assessments despite continued ownership. *See, e.g., In re Pratola*, 152 B.R. 874, 877 (Bankr.D.N.J.1993) (where debtor had never lived in the unit and tried twice to divest herself of title but mortgagee and association refused deed, court found intent reflected debtor's "unequivocal surrender" of interest and refused to allow post-petition assessments to impair debtor's fresh start); *In re Miller*, 125 B.R. 441, 443 (Bankr.

---

sessments," even where the debtor continues to be the record owner.).

**4.** The Eighth Circuit concluded that "the determinative factor in determining which line of cases to follow is whether the condominium declaration and corresponding documents are simply a contract or constitute a covenant running with the land." 60 F.3d at 1296. Since neither the declaration nor any other condominium agreements were submitted to the court, it declined to resolve the issue. The court expressly "decline[d] to adopt either the *Rosteck* or *Rosen-*

*feld* analysis, or some combination of the two lines." *Id.*

**5.** Although *Rosenfeld* involved a cooperative form of ownership, as a general matter, we believe that the discussion relating to the dischargeability of post-petition assessments applies equally to cooperatives, condominiums and timeshares. *See Rosenfeld*, 23 F.3d at 836 n.*.

**6.** *See In re Beeter*, 173 B.R. at 112–13.

W.D.Pa.1991) (benefit accrued only to mortgagee where debtor relinquished occupancy after filing and mortgagee foreclosed upon interest); *In re Ryan*, 100 B.R. 411, 416 (Bankr.N.D.Ill.1989) (agrees with *Rosteck* line of cases but only where debtor unequivocally surrenders property; actual or constructive possession may lead to post-petition liability); *In re Montoya*, 95 B.R. 511 (Bankr.S.D.Ohio 1988) (post-petition fees were discharged as unmatured claim where debtor files intent to surrender property and property is foreclosed).

In our review of the three lines of cases, we observe that all of the decisions cited are Chapter 7 cases. Nevertheless, because the definitions of "debt" and "claim", which are key to this discussion, apply equally to Chapters 7 and 13, 11 U.S.C. § 103(a), we may apply the concepts framed in the cases in the Chapter 13 context.[7]

A Chapter 13 discharge is governed by 11 U.S.C. § 1328(a), which provides in relevant part that:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title;

(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or

(3) for restitution, or criminal fine, included in a sentence on the debtor's conviction of a crime.

To determine whether debtor's discharge included post-petition time-share assessments, we must consider two issues: whether Ocean High's post-petition assessments constitute a "debt" under 11 U.S.C. § 1328(a), and, if so,

whether that debt has been "provided for" by debtor's Chapter 13 plan.

On the first issue, the term "debt" is defined in the Code as a "liability on a claim", 11 U.S.C. § 101(12), and is virtually synonymous with the term "claim". *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Although the terms utilized in the definition of a claim are not themselves defined within the Code, we are guided here by the plain meaning of those terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

■ "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objectives the State seeks to serve in imposing the obligation." *Davenport*, 495 U.S. at 559, 110 S.Ct. at 2131. When an enforceable obligation arises is determined by reference to state law. *Lugo v. Paulsen*, 886 F.2d 602, 607 (3d Cir.1989); *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *see also In re Penn Central Transp. Co.*, 71 F.3d 1113, 1117 (3d Cir.1995).

■ There is no question that under Maryland state law, the financial obligations of a unit owner of a condominium, time-share or cooperative are "covenants running with the land". *See* MARYLAND CONDOMINIUM ACT, MD. CODE ANN. §§ 11–101 *et seq.*; MARYLAND CONTRACT LIEN ACT, MD.CODE ANN. § 14–201(b); MARYLAND REAL ESTATE TIME-SHARING ACT OF MAY 29, 1984, ch. 579, 1984 MD. LAWS 2964, codified at MD.CODE ANN. §§ 11A–101 *et seq.* We understand that the obligation is "inseparably connected to the

---

7. In *In re Harvey*, 88 B.R. 860 (Bankr.N.D.Ill. 1988), a Chapter 13 debtor sought injunctive relief and sanctions against a condominium association for pursuing the collection of post-petition assessments in state court. The debtor had "provided for" the association's claim in her

Chapter 13 plan by curing pre-petition arrearages. The court determined that debtor's discharge under section 1328 did not include post-petition assessments, where debtor remained in possession of the unit following the filing.

ownership of the condominium unit." *In re Raymond*, 129 B.R. at 364. According to the *Raymond* court, "[h]ad this [the unit owner's obligation to pay charges] merely been a promise to pay money isolated from the purpose of the payment, it would not be an obligation which runs with the land." *Id.* The distinction drawn by the *Raymond* court is not supported within the definitional structure of the Code.

■ The "right to payment" described under § 101(5) does not depend upon a contractual arrangement between the parties. *See, e.g. Ohio v. Kovacs*, 469 U.S. 274, 279–81, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985). Nor does the right to payment depend upon whether the promise to pay money is "isolated from the purpose of the payment". Given the broadest possible meaning, the right to payment must include the ongoing in personam obligation of a time-share unit owner to pay association fees. There is no need to fit the "square real estate peg" of homeowners association assessments into the "round hole of the law of contracts". *In re Beeter*, 173 B.R. at 115.

■ Turning to the plain meaning of the adjectives describing the scope of the right to payment, we apply the Third Circuit formulation that a claim is contingent when it becomes due only on the occurrence of a future event. *In re M. Frenville Co.*, 744 F.2d 332, 336 n. 7 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). A claim is unliquidated when it is "[n]ot ascertained in amount" or "not determined". BLACK'S LAW DICTIONARY 1557 (6th ed.1990). "Fixed liabilities" are defined in Black's Law Dictionary as "[t]hose [liabilities that are] certain and definite as to both obligation and amount," *id.* at 638, and a "matured claim" is a "[c]laim which is unconditionally due and owing". *Id.* at 979.

We conclude from this definitional structure that at the time of the filing of debtor's Chapter 13 petition, the obligation of the debtor to Ocean High for post-petition assessments was a contingent, unmatured, unliquidated, unfixed right to payment which constituted a "claim" and a "debt" for § 1328(a) discharge purposes. The claim was contingent upon the retention of owner-ship by the debtor, and the regular assessment of fees by the association. The claim was not fixed in terms of a certain and definite amount due at the time of the filing of the petition. The debt would mature each month as assessments were made by the association.

In *Beeter*, Judge Clark, concerned with the lack of requisite finiteness and the speculative nature of future assessments, posed the following question: "at what point is something just too contingent to be called a claim?" 173 B.R. at 119. He answered the question by opining that post-petition homeowners assessments are too speculative to be considered claims as of the date of the filing of the petition. We cannot agree with Judge Clark's conclusion. The lack of finiteness, and the speculative nature of future events, are inherent problems in all contingent, unliquidated and unmatured obligations. To reject the obligation by the debtor to Ocean High as of the date of the filing of the petition on this basis is to render meaningless and nugatory the terms "contingent", "unliquidated", and "unmatured" in the statutory definition of the term "claim". The answer to Judge Clark's question must be provided by Congress. Judicial measurement of the extent of a contingent claim, while required in rare instances, as in the cases cited by Judge Clark involving future claimants in the context of tort liability, must be limited.

We believe that the *Rosteck* opinion best reflects a plain reading of the statutory definition of a "claim". The Supreme Court has noted that Congress intended to adopt the "broadest possible" definition of a "claim", and that the Code "contemplates that all legal obligations of the debtor, [no matter how remote or contingent,] will be able to be dealt with in the bankruptcy case." *Davenport*, 495 U.S. at 558, 110 S.Ct. at 2130 (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787). *See also Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). We cannot carve out a judicial exception to the definition of a claim "absent a clear indication that Congress intended such a departure."

*Davenport,* 495 U.S. at 563, 110 S.Ct. at 2133. We note in this regard that in the Chapter 7 context, Congress has now clarified the extent to which post-petition homeowners association assessments may be dischargeable.[8] The legislative history strongly supports the conclusion that prior to the 1994 amendment of § 523(a), obligations to pay post-petition assessments would be discharged.[9]

■ Our conclusion that post-petition assessments constitute claims within the definition of 11 U.S.C. § 101(5) and may, therefore, be discharged as an in personam obligation of the debtor does not mean that if the debtor continues to use the unit and/or receives benefit from it, that she may do so without compensating the association. While this factual scenario is not directly implicated here because debtor has certified that she did not use or benefit from the time-share following the filing of the petition, liability for post-petition use and occupancy, on theories of unjust enrichment and/or quantum meruit, might be available. *See, e.g., In re Lamb,* 171 B.R. 52, 55 (Bankr.N.D.Ohio 1994).

■ The second question presented under § 1328(a) to qualify the Ocean High claim for discharge is whether the obligation has been provided for in debtor's plan. That an obligation has been provided for in a Chapter 13 plan is "commonly understood to mean that a plan 'makes a provision' for, 'deals with,' or even 'refers to' a claim." *Rake v. Wade,* 508 U.S. 464, 474, 113 S.Ct. 2187, 2193, 124 L.Ed.2d 424 (1993). As we have noted, the debtor's plan provided for the surrender of the two-week time-share in Ocean High, Ocean City, Maryland, and specifically listed Ocean High Condominium Associates as a secured creditor. The plan was confirmed and successfully completed. Although no formal action was taken by the debtor or the secured creditor to accomplish the "surrender" of the premises, there is no question that the claim was "provided for" under the Chapter 13 plan.

■ We conclude that the successful completion of debtor's Chapter 13 plan discharged the debt due from the debtor to the Ocean High Condominium Associates under 11 U.S.C. § 1328(a), for both pre-petition and post-petition assessments. Of course, any liens imposed upon the time-share units in favor of Ocean High would survive the bankruptcy on this record.

In reaching our conclusion, we note that the parties have not addressed the collateral estoppel impact of the entry of a judgment in state court against the debtor. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Graham,* 973 F.2d 1089, 1097 (3d Cir.1992). The debtor has certified that she answered the complaint

---

8. For Chapter 7 cases arising after October 22, 1994, the effective date of the Bankruptcy Reform Act of 1994, this issue has been resolved by the addition of 11 U.S.C. § 523(a)(16), which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which—
(A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or
(B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order or relief in a pending or subsequent bankruptcy case.
11 U.S.C. § 523(a)(16).

9. The legislative history accompanying § 523(a)(16) explains that:

This section amends section 523(a) of the Bankruptcy Code to except from discharge those fees that become due to condominiums, cooperatives, or similar membership associations after the filing of a petition, but only to the extent that the fee is payable for time during which the debtor either lived in or received rent for the condominium or cooperative unit. Except to the extent that the debt is nondischargeable under this section, obligations to pay such fees would be dischargeable. *See Matter of Rosteck,* 899 F.2d 694 (7th Cir.1990).
H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 41, U.S.Code Cong. & Admin.News 1994, pp. 3340, 3349–3350 (Oct. 4, 1994; 140 Cong. Rec. H10752–01, 10770 (Oct. 4, 1994).

filed by Ocean High against her in the District Court of Maryland and "raised the defense of Bankruptcy, but did not attend the hearing in Maryland ... A judgement of default was entered against [her] in the district of Maryland." The procedural conduct of the state court matter is unclear. We do not know whether the issue of the discharge of the obligation was actually presented to and resolved by the state court, or whether the entire controversy doctrine, as followed in the state of Maryland, would require the issue to be presented and resolved in order to preserve the question. We do not resolve the issue, but simply note that a different result might have been reached here if that issue had been addressed by the parties. *See, e.g., In re Whitten*, 192 B.R. 10, 15 (Bankr.D.Mass.1996) (The state court has concurrent jurisdiction to determine whether the scope of debtor's discharge under 11 U.S.C. § 524(e) extended to post-petition assessments. The state court judgment in favor of the condominium association against the debtor was entered after consideration of debtor's affirmative defense that the debt was discharged in his Chapter 7 case, precluding the bankruptcy court from revisiting the issue.)

■ We reject debtor's quest for sanctions against Ocean High Condominium Associates. As many courts have expressed, the widespread and legitimate disagreement among courts on the subject of the opportunity to discharge post-petition assessments precludes the imposition of sanctions. Debtor's quest to reopen the case and to vacate the judgment of the state court assessing damages against the debtor is granted. Debtor's motion for sanctions is denied.

Debtor's counsel shall submit an order in conformance herewith.