**In re Reynaldo LOZADA, Jeannette Lozada, Debtors.**

**OLD BRIDGE ESTATES COMMUNITY ASSN., INC., Plaintiff,**

v.

**Reynaldo LOZADA, et al., Defendants.**

Bankruptcy No. 95–13599–SSM.
Adversary No. 97–1184.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 20, 1997.

---

James V. Ingold, Chadwick, Washington, Otlers, Moriarty & Lynn, P.C., Fairfax, VA, for plaintiff.

Joel Steinberg, Steven J. Heim, Joel Steinberg & Associates, P.C., Fairfax, VA, for debtor.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on cross–motions for summary judgment. A hearing was held on September 9, 1997, at which the parties presented argument and agreed that the matter was an issue of law for the court to decide. At the conclusion of the hearing, the court reserved ruling and allowed counsel for the parties to submit post–hearing memoranda. The parties have done so and the matter is now ripe for determination.

The issue is whether the amendments made to § 523 of the Bankruptcy Code by the Bankruptcy Reform Act of 1994 with respect to the dischargeability of post–petition condominium and cooperative assessments also apply to post–petition assessments by other types of property or homeowner associations. The debtors, who contend that the amendments do apply, have been sued by a property owners association for post–petition dues and have pleaded their discharge. The association argues that the debtors' discharge does not relieve them from liability for post–petition assessments and requests the court, in effect, to enter judgment on the pleadings. The issue is one of apparent first impression.[1]

### Facts and Procedural Background

Reynaldo and Jeannette Lozada, who are husband and wife ("the debtors"), filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on

---

1. As of the date this opinion was issued, the court could not locate *any* case applying § 523(a)(16). The few reported cases decided after the Bankruptcy Reform Act of 1994 was enacted concerned cases to which § 523(a)(16) did not apply because they had been commenced before the effective date of the act. *See Affeldt v. Westbrooke Condominium Assoc.,* 60 F.3d 1292, 1295 n. 3 (8th Cir.1995); *In re Mattera,* 203 B.R. 565, 572 & n. 8 (Bankr.D.N.J.1997); *In re Whitten,* 192 B.R. 10, 13 (Bankr.D.Mass.1996); *Shadowbrook Condominium Trust v. O'Leary,* 3 Mass. L.Rptr. 643, 1995 WL 809512 at *2 (Mass.Sup. Ct.1995).

August 15, 1995, and received a discharge of their dischargeable debts on November 17, 1995. At the time they filed their petition, they resided at 3620 Woodhaven Court, Woodbridge, Virginia. They listed the property on their schedules as having a fair market value of $103,700, subject to a deed of trust in the amount of 116,364.82. On their statement of intent with respect to secured property, they stated that they intended to retain the property. Apparently, they later changed their mind, and in their pleadings they allege that they moved out of the property prior to October 1995, with the expectation that the secured lender would foreclose. For reasons that are not clear, the foreclosure did not take place until August 19, 1996, some ten months later. The Old Bridge Estates Community Association, Inc. ("the Association") contends that required dues and late fees for October 1, 1995, through August 19, 1996 with respect to the property have not been paid in the amount of $581.57. On April 24, 1997, the Association brought an action against the debtors in the General District Court of Prince William County, Virginia, to recover that sum. The debtors removed that action to this court under 28 U.S.C. § 1452 and filed an answer pleading their discharge as an affirmative defense. The present motions followed.

*Conclusions of Law and Discussion*

## I.

This court has jurisdiction over this removed action under 28 U.S.C. §§ 1452, 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Dischargeability is a core issue with respect to which a bankruptcy judge may enter final judgments and orders. 28 U.S.C. § 157(b)(2)(I). When determining the dischargeability of a debt, a bankruptcy court also has jurisdiction to determine the amount of the debt. *Harris v. U.S. Fire Ins. Co.,* 162 B.R. 466 (E.D.Va.1994).

## II.

While both parties term their respective motions as ones for summary judgment, in substance both are requesting that the court enter judgment on the pleadings. Under Fed.R.Civ.P. 12(c), made applicable to adversary proceedings in bankruptcy by Fed. R.Bankr.P. 7012(b):

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Judgment on the pleadings is appropriate when the court looks only at the pleadings and determines that there is no issue as to a material fact and only matters of law remain. *See Republic Ins. Co. v. Culbertson,* 717 F.Supp. 415, 418 (E.D.Va.1989); *King v. Gemini Food Services, Inc.,* 438 F.Supp. 964, 966 (E.D.Va.1976), *aff'd on other grounds,* 562 F.2d 297 (4th Cir.1977), *cert. denied* 434 U.S. 1065, 98 S.Ct. 1242, 55 L.Ed.2d 766 (1978); *see also George v. Pacific–CSC Work Furlough,* 91 F.3d 1227, 1229 (9th Cir.1996); *Lion Oil Co. v. Tosco Corp.,* 90 F.3d 268, 270 (8th Cir.1996); *Hebert Abstract Co. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990). A motion brought under Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Accordingly, the court must accept all of the well-pleaded allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *See Lion Oil Co.,* 90 F.3d at 270; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993). In the present case, neither party has offered matters outside the pleadings and the parties have stipulated to the relevant facts. Accordingly, the court treats the parties' motions as requesting judgment on the pleadings under Fed.R.Civ.P. 12(c).

## III.

Under § 727(b), Bankruptcy Code, a discharge in a chapter 7 case discharges the debtor from liability for "all debts that arose

before the date of the order for relief."[2] Certain debts, however, are excepted from the discharge. § 523(a), Bankruptcy Code. Relevant to the present controversy, § 523(a)(16) excepts from discharge debts–

for a fee or assessment that becomes due and payable after the order for relief to *a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation,* but only if such fee or assessment is payable for a period during which—

(A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or

(B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period,

but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order or relief in a pending or subsequent bankruptcy case.

(Emphasis added).

■ The language in question was added to the Bankruptcy Code by § 309 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994). Section 309 is titled "Fairness to Condominium and Cooperative Owners" and simply states that § 523(a) of title 11, United States Code is amended by adding the above–quoted language. The amendment was intended to strike an equitable balance between courts that held that all post–petition assessments are discharged as having arisen, albeit in a contingent and unmatured state, pre–petition, with other courts finding that such post–petition assessments are not discharged because the association's right to payment did not arise until post–petition. *Compare In re Rosteck,* 899 F.2d 694 (7th Cir.1990) (assessments discharged) *with River Place East Housing Corp. v. Rosenfeld, (In re Rosenfeld),* 23 F.3d 833 (4th Cir.1994) (assessments not discharged). The express language of § 523(a)(16) only addresses fees and assessments due because of the debtor's ownership of a "condominium" or "cooperative" unit and is silent with respect to other types of property ownership. Debtor's counsel, however, urges the court to follow the "logic" underlying § 523(a)(16), Bankruptcy Code, and the section's legislative history as suggesting that § 523(a)(16) is not so narrow in scope as to exclude post–petition assessments for homeowner's association dues.[3]

To be sure, debtor's counsel can find strong support in the legislative history. The section–by–section analysis of the Bankruptcy Reform Act contains the following description with regard to the purpose of § 523(a)(16):

This section amends section 523(a) of the Bankruptcy Code to except from discharge those fees that become due to condominiums, cooperatives, *or similar membership associations* after the filing of a petition, but only to the extent that the fee is payable for time during which the debtor either lived in or received rent for the condominium or cooperative unit. Except to the extent that the debt is nondischargeable under this section, obligations to pay such fees would be dischargeable. See *Matter of Rosteck,* 899 F.2d 694 (7th Cir.1990).

140 Cong. Rec. H10764 (daily ed. October 4, 1994) (emphasis added) (reprinted in E App. Collier on Bankruptcy at App. Pt. 9–97 to 98). Additionally, the debtor points to the following exchange that took place between

---

**2.** In a voluntary case, the filing of the petition "constitutes an order for relief." § 301, Bankruptcy Code.

**3.** One commentator notes the current dilemma before the court in stating:

Code § 523(a)(16) specifically references condominium associations and cooperative housing corporation fees and assessments. Under a strict reading Code § 523(a)(16), the exception does not extend to homeowner's associations. The legislative history to Code § 523(a)(16), however, states that the exception is intended to have a broad application and expresses a concern with respect to the effect on 'condominiums, cooperatives, or similar membership associations.' The extent to which courts will look to the legislative history awaits determination.

Norton Bankruptcy Law and Practice 2d § 47:54.5 (William L. Norton, Jr., ed.1997) (footnote omitted).

Senators Thurmond and Heflin in debate on the congressional floor before enactment of the statute:

> Mr. THURMOND. Mr. President, I wish to congratulate the chairman of the Judiciary Committee's Courts and Administrative Practices Subcommittee on passing H.R. 5119, the Bankruptcy Amendments Act of 1994, in the Senate last night. I wish to ask the distinguished chairman one question relating to the amendment which I offered on the bankruptcy bill relating to the exception from discharge of certain fees and assessments which become due to condominium, cooperative and similar membership associations. Mr. Chairman, is it not correct, that although section 309 of H.R. 5116 as passed in the House and the Senate refers *in particular to condominium and cooperative housing, that the section is broad enough to cover and intended to cover a variety of residential housing community associations?*
>
> Mr. HEFLIN. You are correct, Senator THURMOND. *As long as the residential housing community association has the attributes of condominium and cooperative associations, including mandatory membership and mandatory assessments for maintaining common areas, which run with the land, section 309 would apply to the members of the association.* The type of housing association makes no difference to the underlying purpose of section 309, which is to avoid the unfair burden on the other members of the association which results from discharging the debtor's assessments in the situations specified in section 309.

140 Cong. Rec. S14750 (daily ed. October 7, 1994) (reprinted in E App. Collier on Bankruptcy at App. Pt. 9–127 to 128).[4] However, other than those two statements which clearly support debtor's proposition that homeowner's association assessments should be included within the scope of § 523(a)(16), the balance of the legislative history is ambiguous at best. The politicians debating the

inclusion of this amendment to the bill repeatedly switch between using the term "community association" and "condominium or cooperative association," thus leaving the court undecided as to the exact scope intended by § 523(a)(16). *See generally* 140 Cong. Rec. S4521, 4526 (daily ed. April 20, 1994) (statements of Senators Thurmond and Heflin) (suggesting both a limited application of § 523(a)(16) to include just condominium and cooperative dues by only discussing those types of dues at times, and one broader in scope that would include "similar membership associations."). Moreover, it is clear that the bill's sponsors were not as concerned with whether the debtor could discharge the debt if the sections requirements were met, but rather that the debt be nondischargeable if the debtor enjoyed the benefits of postpetition ownership. For example, Senator Thurmond made the following statement:

> It is necessary to correct a line of cases in which courts have held that future payments by the debtor to a community association are discharged in bankruptcy. This amendment simply makes clear that assessments by community associations which become due after the bankruptcy order for relief are not discharged, as long as the debtor receives the benefits.... With the current ambiguity in the Bankruptcy Code, owners of units in community associations may be unfairly burdened by increases in their association fees if their neighbors declare bankruptcy and receive a discharge of the association fees which are due in the future. Some courts hold that these future fees are discharged in bankruptcy, so that the debtors need not pay their share of the expenses of the association even in the future after their bankruptcy is over and even though they continue to receive the benefits from the association.... The debtor's neighbors who belong to the community association will be treated much more fairly by avoiding the higher assessments which result from giving the debtor a free ride.

---

**4.** Were floor debates controlling on the issue of legislative intent, there can be little doubt that a mandatory–membership residential property owners association in Virginia would easily satisfy the criteria expressed by Senator Heflin for having the "attributes" of condominium and cooperative associations. See Virginia Property Owners Association Act, Va.Code Ann. § 55–508 through 516.2.

140 Cong.Rec. S4521, 4526 (daily ed. April 11, 1994) (statements of Senator Thurmond). Accordingly, the court believes the legislative history is murkier than the debtor contends, and would under other circumstances accord it little weight. *See Associates Commercial Corp. v. Rash,* — U.S. —, — n. 4, 117 S.Ct. 1879, 1886 n. 4, 138 L.Ed.2d 148 (1997) (according no weight to legislative history that supported both parties); *cf. Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) (examining conflicting legislative history and concluding that it afforded little help is determining whether the Bankruptcy Code permitted an individual debtor to file for chapter 11 relief).

 Debtor's principal problem is how to overcome the clear, unambiguous language of § 523(a)(16). The Supreme Court has repeatedly held that in interpreting statutes under the Bankruptcy Code, a court must begin with the statute itself. *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the statute is clear and unambiguous on its face, the court must apply the plain meaning of the statute and enforce it according to its terms. *Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("the plain language of the Bankruptcy Code ... is our determinant"); *Toibb v. Radloff,* 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) ("In our view, the plain language of the Bankruptcy Code disposes of the question before us."); *Ron Pair Enterprises,* 489 U.S. at 241, 109 S.Ct. at 1030 ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute"). It is only when the statute is ambiguous that a court is permitted to look behind the words to attempt to derive the legislature's intent. *Patterson,* 504 U.S. at

761, 112 S.Ct. at 2248 ("Although courts 'appropriately may refer to a statute's legislative history to resolve statutory ambiguity,' the clarity of the statutory language at issue in this case obviates the need for any such inquiry.") (*quoting Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Dewsnup v. Timm,* 502 U.S. 410, 419–20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992); *Ron Pair Enterprises,* 489 U.S. at 235, 109 S.Ct. at 1030; *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 377–79, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988). Here, the court finds that § 523(a)(16) is clear and unambiguous on its face, and correspondingly, the court need not look behind the statute to consider legislative history. Congress in enacting § 523(a)(16) drafted a very precise and specific section. Had it intended to include homeowner's association assessments, it easily could have done so. But it did not. For some unexplained reason, language from the section–by section analysis that arguably supports debtor's position ("or similar membership associations"), was omitted and excluded from the section as enacted. Perhaps this was intentional. Perhaps it was an oversight.[5] However, it is not this court's duty—or province—to rewrite Congress's enactments. *Patterson,* 504 U.S. at 759, 112 S.Ct. at 2247 ("We must enforce the statute according to its terms."). Simply because Congress did not predict all of the consequences of a statutory enactment is not a sufficient basis for failing to give the statute its plain, unambiguous meaning. *Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991). Accordingly, this court holds that post–petition property owner's homeowner's assessments and fees do not fall within the provisions of § 523(a)(16).

## IV.

This holding, however, does not end the inquiry. Because this court finds that

---

5. There is no obvious reason why Congress would have wanted to strictly limit the application of § 523(a)(16) to condominiums and cooperatives, and the result reached in the present case arguably represents bad policy. However, statutes have to be construed as written. Certainly, Congress is always free to amend

§ 523(a)(16) to reflect a broader application. That would obviously be of small comfort to the debtors in the present case. Nevertheless, the fact remains that, in light of *Rosenfeld,* the debtors are no worse off now than they were before the Bankruptcy Reform act of 1994 was enacted.

§ 523(a)(16) does not apply, the court turns to case law involving post–petition assessments by housing membership associations. On this point, the court believes that the Fourth Circuit's opinion in *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld),* 23 F.3d 833 (4th Cir.1994) remains controlling. In *Rosenfeld,* the debtor acquired in 1983 an ownership interest in a cooperative association[6] and a proprietary lease in an apartment. *Id.* at 835. The cooperative was governed by a declaration that included a covenant running with the land which compelled owners to pay association dues as they were assessed. *Id.* The debtor filed for chapter 7 bankruptcy protection in October 1990 and received his discharge on February 13, 1991. *Id.* While the debtor indicated an intent to abandon the property and signed a consent order granting the secured creditor relief from the automatic stay, the creditor never foreclosed its interest. *Id.* The debtor, although record owner of the property, neither resided in the apartment nor leased the apartment to someone else post–petition. *Id.* After the debtor was granted a discharge, the association brought a suit seeking post-petition association dues for an amount exceeding $3,000. *Id.* The debtor pleaded his discharge as a defense. The Fourth Circuit held that the association's right to payment of the dues did not arise until post-petition and that the debtor's liability for the assessments was not discharged. *Id.* at 838. The court reasoned that

> Under the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued post–petition ownership of the property and not from a pre–petition contractual obligation. The post–petition assessments were for the upkeep of common areas and other common expenses during Rosenfeld's post–petition ownership. River Place's right to payment for post–petition assess-

ments did not arise pre–petition and was not extinguished by Rosenfeld's bankruptcy discharge.

*Id.* at 837 (citation omitted).

 Turning to the present case, the court finds that, save for the fact that a homeowner's association is involved here as compared to a cooperative association in *Rosenfeld,* this case is factually on all fours with *Rosenfeld.* The debtors here vacated the property during the pendency of their chapter 7 case with the intent of permitting the secured creditor to foreclose. The property was not foreclosed upon until August of 1996, with the monthly assessments continuing to accrue. The debtors did not rent the property to a tenant. The plaintiff's right to collect the monthly assessments from November of 1995 to August of 1996 arose post–petition. Accordingly, the court finds that the right to collect these fees was unaffected by the debtors' discharge.

## V.

There being no dispute as to the amount of the post–petition fees, a separate judgment will be entered in favor of the plaintiff in the amount of $581.57 with interest at the Federal judgment rate from the date of judgment until paid.

---

6. Although *Rosenfeld* dealt with cooperative association dues, the court believes that the holding of the case applies to other types of property ownership. The Fourth Circuit examined cases concerning different types of ownership associations to resolve whether post-petition cooperative assessments were discharged. *Rosenfeld,* 23 F.3d at 836 n. * ("[T]he analysis of whether the debtor's liability for post-petition assessments is extinguished by the discharge is essentially the same.").