**In re Samuel O. & Lorraine B. STONE, Debtors.**

**Samuel O. & Lorraine B. Stone, Plaintiffs,**

v.

**Rubidell Resort Condominium, Defendant.**

**Bankruptcy No. 98–35482–7.**
**Adversary No. 99–3090–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Dec. 6, 1999.

Catherine J. Gloeckler, Janesville, WI, for plaintiffs.

JoAnne L. Krabbe, Stupar, Schuster & Cooper, S.C., Milwaukee, WI, for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The facts for this adversary proceeding are not in dispute. The parties have stipulated that: The debtors, Samuel and Lorraine Stone, filed a Chapter 7 petition on November 3, 1998. On February 10, 1999, the debtors were granted a discharge. The case was closed February 26, 1999, and reopened April 27, 1999, on the debtor's motion.

On May 25, 1986, the debtors entered into a land contract with Rubidell Recreation, Inc. to purchase a campsite de-

scribed as Unit 362 for $15,800. On October 29, 1991, Rubidell Recreation, Inc. assigned the land contract to Lantana Resorts, Inc. The debtors surrendered their interest in Unit 362 to Lantana Resorts, Inc. by quit claim deed on June 15, 1999.

The debtors' ownership and use of Unit 362 was pursuant to the Declaration of Condominium of Rubidell Resort Condominium under the Condominium Act, Chapter 703, Wis.Stats. The Bylaws, Article V of the Declaration at subparagraph B, provide for the ongoing assessment of condominium maintenance fees, the manner in which they are established and the rules for payment. Maintenance fees on the debtors' unit were $39.46 per month. When the debtors transferred the property to Lantana Resorts, the debtors owed $276.22 in post-petition maintenance fees and interest. The fees incurred pre-petition were discharged in the bankruptcy.

Unit 362 was not a dwelling unit. At the time of filing of the bankruptcy and subsequent to the bankruptcy, the debtors never physically occupied the unit. Furthermore, the debtors never rented Unit 362 to a tenant, either before or after filing bankruptcy.

On January 26, 1999, Rubidell's lawyer sent a letter to the debtors' lawyer, claiming nondischargeability of post-petition maintenance fees and suggested that debtors' counsel confer with her clients concerning the payment of future maintenance fees. This letter contained language required by the Fair Debt Collection Act, but did not specifically demand an amount to be paid or a date upon which payment of the post-petition fees would be due.

The debtors brought this adversary proceeding to determine that the post-petition maintenance fees are discharged. According to the debtors, the debt for post-petition condominium fees existed in an unliquidated, contingent form when the debtors filed their bankruptcy petition. The debtors also seek sanctions against Rubidell for violating the automatic stay by attempting to collect a debt against the debtors which arose before the commencement of the case. Rubidell defends by arguing that the debtors' post-petition maintenance fees are not dischargeable because the right to payment did not arise until post-petition, and that the letter from their lawyer to the debtors' lawyer was neither a demand for payment of a specific amount, nor an effort to collect a pre-petition debt.

■ First, we must determine whether the § 523(a)(16) exception to discharge applies to these facts. The parties seem to agree that it does not, and so do we. Section 523(a)(16) provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which . . . the debtor physically occupied a dwelling unit in the condominium or cooperative project; or . . . the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case. . . .

11 U.S.C. § 523(a)(16). In *In re Lozada*, 214 B.R. 558, 563 (Bankr.E.D.Va.1997, J. Mitchell) *aff'd In re Lozada*, 176 F.3d 475, 1999 WL 190279 (4th Cir.1999), the bankruptcy court discussed the scope of § 523(a)(16). Based on the U.S. Supreme Court holding in *Patterson v. Shumate*, the court stated that it was bound by the rule that "when a statute is clear and unambiguous on its face, the court must apply the plain meaning of the statute and enforce it according to its terms." *Id.*

*citing Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The court then determined that § 523(a)(16) was clear and unambiguous on its face:

> Here, this court finds that § 523(a)(16) is clear and unambiguous on its face, and correspondingly, the court need not look behind the statute to consider legislative history. Congress in enacting § 523(a)(16) drafted a very precise and specific section. Had it intended to include homeowner's association assessments, it easily could have done so. But it did not ... [I]t is not this court's duty—or province—to rewrite Congress's enactments ... Accordingly, this court holds that post-petition property owner's homeowner's assessments and fees do not fall within the provisions of § 523(a)(16).

*Id.*

Although our case does involve condominium fees, the debtors never physically occupied the unit, nor did they rent the unit or receive rent from the unit. Based on the stipulated facts, the clear and unambiguous language of § 523(a)(16) has not been met for three reasons: (1) the unit is not a dwelling unit; (2) the debtors never physically occupied the unit; and (3) the debtors never rented or received rent from the unit.

■ Thus, the post-petition condominium maintenance fees may only be discharged in the debtors' bankruptcy if this court finds that they arose pre-petition. The Seventh Circuit has held that post-petition assessments are dischargeable as pre-petition debt. *In the Matter of Rosteck,* 899 F.2d 694, 697 (7th Cir.1990). The court concluded that debt for future assessments based on a pre-petition contract to pay arose pre-petition, and was discharged in the debtors' Chapter 7 bankruptcy. *Id.* In reaching its decision, the Seventh Circuit relied on the definitions of "debt" and "claim" under the Bankruptcy Code:

The Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(11). The Code, in turn, defines a "claim" in pertinent part as a: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(4)....
Under those broad definitions of claim and debt, the Rostecks had a debt for future condominium assessments when they filed their bankruptcy petition. It is true that the Rostecks did not actually owe money to Old Willow for assessments beyond those Old Willow had assessed before bankruptcy. But the condominium declaration is a contract ... *and by entering that contract the Rostecks agreed to pay Old Willow any assessments it might levy.* Whether and how much the Rostecks would have to pay in the future were uncertain, depending upon, among other things, whether the Rostecks continued to own the condominium and whether Old Willow actually levied assessments. But, as we have seen, contingent, unmatured, unliquidated, and unfixed debts are still debts.

*Id.* at 696–697. This reasoning of the Seventh Circuit controls our analysis.

This reasoning was relied and elaborated upon by the bankruptcy court in *In the Matter of Mattera,* 203 B.R. 565, 571 (Bankr.D.N.J.1997, J. Wizmur) in a Chapter 13 context, which found that under a plain reading of the statutory definition of "claim," claim is defined in the broadest possible way. The court stated: "The Supreme Court has noted that Congress intended to adopt the 'broadest possible' definition of a 'claim', and that the Code 'contemplates that all legal obligations of the debtor, [no matter how remote or contingent,] will be able to be dealt with in the bankruptcy case.' " The *Mattera* court further relied on the legislative history of § 523(a)(16) in determining that *Rosteck* was still good law:

This section amends section 523(a) of the Bankruptcy Code to except from discharge those fees that become due to condominiums, cooperatives or similar membership associations after the filing of a petition, but only to the extent that the fee is payable for time during which the debtor either lived in or received rent for the condominium or cooperative unit. Except to the extent that the debt is nondischargeable under this section, obligations to pay such fees would be dischargeable. See *Matter of Rosteck*, 899 F.2d 694 (7th Cir.1990).

*Id.* at Footnote 9 *citing* H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 41, U.S.Code & Admin.News 1994, pp. 3340, 3349–3350 (Oct. 4, 1994). Therefore, even though Congress subsequently amended the Bankruptcy Code, it indicated in the legislative history that *In re Rosteck* was still good law. *In re Rosteck* states the controlling law in the Seventh Circuit.

The defendants have argued that this court should not follow the Seventh Circuit, but rather should adopt the holding of the Fourth Circuit in *In re Rosenfeld*, 23 F.3d 833, 837 (4th Cir.1994). That may be a nice try, but this court is bound by the holdings of the Seventh Circuit when, as in this case, the facts are not distinguishable. The condominium maintenance fees that accrued post-petition were discharged in the debtors' Chapter 7 bankruptcy because under the contract, the debt was incurred pre-petition, although contingent and unliquidated at the time of filing.

The debtors urge us to sanction Rubidell under § 362(h). According to the debtors, the letter Rubidell's lawyer sent to debtors' lawyer was a willful violation of the automatic stay because it included an attempt to collect a debt for post-petition maintenance fees. Sanctions are not appropriate in this instance. "[A]s many courts have expressed, the widespread and legitimate disagreement among courts on the subject of the opportunity to discharge post-petition assessments precludes the imposition of sanctions." *Mattera*, 203

B.R. at 573. The defendants in this case made a strained but legitimate argument supported by case law that the debtors' post-petition assessments were nondischargeable. If Rubidell's counsel attempted to collect any debt from the debtors, they apparently did so in the good faith belief that the debt was nondischargeable and that the automatic stay did not apply.

### ORDER

The court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that the plaintiffs' motion for summary judgment is GRANTED.

IT IS HEREBY FURTHER ORDERED that the plaintiffs' motion for sanctions is DENIED.