# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2999

_____

| | | |
|---|---|---|
| Roger Potthoff, an individual, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| William Morin, in his individual | * | District of Minnesota |
| capacity; Port Authority of the | * | |
| City of St. Paul, a public corporation, | * | |
| | * | |
| Appellees. | * | |
| | * | |
| | * | |

_____

Submitted:  October 20, 2000

Filed:  April 5, 2001

_____

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Roger Potthoff appeals from a final order entered in the United States District Court[1] for the District of Minnesota dismissing his state and federal claims against William M. Morin, the Port Authority of the City of St. Paul ("Port Authority"), Hines Interests Limited Partnership ("Hines"), and John Doe. See Potthoff v. Morin, No. 98-1715 (D. Minn. June 14, 1999) (order dismissing complaint with prejudice pursuant to Fed. R. Civ. P. 12(c)). For reversal, Potthoff argues that the district court erred in dismissing for lack of standing his claim against Morin brought pursuant to 42 U.S.C. § 1983. For the reasons discussed below, we affirm the order of the district court.

Jurisdiction was proper in the district court under 28 U.S.C. §§ 1331, 1343, and 1367. Jurisdiction is proper in this court under 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

Potthoff is the sole shareholder of ComReal Corporation ("ComReal"), a Minnesota corporation that has no parent corporation. On or about June 30, 1998, Potthoff and ComReal (together "plaintiffs") filed the underlying complaint in Minnesota state court against Morin, the Port Authority, Hines, and John Doe. The following is a summary of the pertinent factual allegations set forth in the complaint. See Addendum to Brief for Appellant at 2-6 (complaint ¶¶ 8-31).

On January 23, 1996, Hines, a Delaware limited partnership with offices in Ramsey County, Minnesota, entered into an Asset Management and Marketing Agreement ("Marketing Agreement") with the Port Authority.[2] Under the Marketing

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]The Port Authority is a governmental subdivision of the City of St. Paul and has the right to sue and be sued in its own name, as provided by Minn. Stat. § 469.049.

Agreement, Hines agreed to manage, operate, and maintain the Piper Jaffray Plaza ("Plaza"), which is located within the geographical limits of the City and is owned by the Port Authority. The Marketing Agreement also required Hines to lease the Plaza's office space to individual tenants. In exchange, the Port Authority agreed to pay Hines a fee.

On February 1, 1996, Hines and ComReal entered into an Exclusive Leasing Agreement ("Leasing Agreement"), which provided that ComReal would have the exclusive right to solicit and lease office space to tenants for the Plaza in exchange for a fee to be paid by Hines to ComReal. The Leasing Agreement required Potthoff to act as the principal employee of ComReal, and it provided Potthoff the opportunity to earn significant commissions.

On or about May 1, 1997, a local newspaper published an article in which Potthoff was quoted criticizing the Mayor of St. Paul regarding a matter involving municipal parking lots. The same day, Morin, the manager of the Port Authority, telephoned Potthoff and advised Potthoff "that he worked for the City, and that such criticism of the Mayor would not be tolerated"; Morin further stated that the Leasing Agreement would be terminated if Potthoff "did not recant and desist from such criticism of Mayor Coleman." Addendum to Brief for Appellant at 4 (complaint ¶¶ 19, 20). In response, Potthoff indicated that he "would not stand by and allow [Morin] or other individuals acting on behalf of the Port Authority or the City of St. Paul to censor him and otherwise interfere with his freedom of speech and other civil rights." Id. (complaint ¶ 21).

On or about May 6, 1997, Potthoff had a telephone conversation with William Chopp, the Group Property Manager of Hines, who told Potthoff that Hines had been directed by Morin to terminate the Leasing Agreement. Chopp told Potthoff that Morin and the Port Authority wanted Hines to terminate the Leasing Agreement because "'The Port [Authority] is pissed-off that you won't shut up in criticizing the Mayor on

parking. They are the client, the owner, and they want you gone.'" Id. (complaint ¶ 24 (purportedly quoting William Chopp's statement)). Potthoff and ComReal sent a letter to Morin and the Port Authority indicating that they (Morin and the Port Authority) were illegally interfering with the Leasing Agreement as well as Potthoff's civil rights.

On May 15, 1997, Hines notified ComReal in writing that it was terminating the Leasing Agreement pursuant to § 5.2 of the Leasing Agreement. Section 5.2 of the Leasing Agreement provided Hines with the right to terminate the agreement if:

> 5.2 (a)    Owner [Port Authority] so requests of Manager [Hines]; or
>
> 5.2 (b)    Broker [ComReal] shall fail to perform its duties under this Leasing Agreement and such failure shall continue for ten (10) days after written notice from Manager to Broker; or
>
> 5.2 (c)    Manager, in good faith, delivers to Broker a written description of the deficiencies of Broker as determined by Manager in performing Broker's duties under this Leasing Agreement and such deficiencies are not corrected within (10) days after Broker receives such description.

On or about May 14, 1998, counsel for plaintiffs wrote a letter to Hines requesting clarification as to which of the three provisions in § 5.2 of the Leasing Agreement Hines relied upon for authority to terminate. Hines did not respond to plaintiffs' letter.

Based upon the above-stated factual allegations, the complaint set forth the following claims: Count I, "interference with contractual relations," against Morin and the Port Authority; Count II, "claim under 42 U.S.C. § 1983," against Morin, for violating the free speech and due process rights of Potthoff; Count III, "breach of

contract," against Hines; and Count IV, "liability of undiscovered parties." See id. at 6-8 (complaint ¶¶ 31-43).

Morin and the Port Authority removed the case to federal court. They moved to dismiss the complaint and to stay discovery. The matter was referred to a magistrate judge[3] pursuant to 28 U.S.C. § 636(b)(1)(B). Following a hearing, the magistrate judge issued a report and recommendation. Potthoff v. Morin, No. 98-1715 (D. Minn. Apr. 30, 1999) (hereinafter "report and recommendation"). In addressing Count II of the complaint the magistrate judge observed that the § 1983 cause of action against Morin alleged a deprivation of only Potthoff's rights and, therefore, Potthoff was the only plaintiff asserting the claim. The magistrate judge further noted that Potthoff, as the sole shareholder of ComReal, only alleged losses that flowed from the termination of the Leasing Agreement between ComReal and Hines. Thus, the magistrate judge reasoned, Potthoff's allegations merely stated a claim of derivative injury, not injury that was separate and independent from the injury allegedly suffered by ComReal. The magistrate judge concluded that Potthoff lacked standing to bring his § 1983 claim against Morin. See id. at 15-19 (citing Bellows v. Amoco Oil Co., 118 F.3d 268 (5th Cir. 1997), cert. denied, 522 U.S. 1068 (1998), and Erlich v. Glasner, 418 F.2d 226 (9th Cir. 1969)). The magistrate judge recommended dismissal with prejudice of the claims against Morin and the Port Authority, pursuant to Fed. R. Civ. P. 12(c),[4] and *sua sponte* dismissal without prejudice of the claims against Hines and John Doe, pursuant to Fed. R. Civ. P. 4(m). See id. at 19.

---

[3]The Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota.

[4]The magistrate judge declined to address Morin's qualified immunity argument.

Plaintiffs filed objections to the magistrate judge's report and recommendation. Upon review, the district court adopted the recommendations of the magistrate judge. See id. (June 14, 1999) (order dismissing the complaint) (hereinafter "slip op."). Regarding Potthoff's § 1983 claim, the district court observed that compensatory damages may not be recovered under § 1983 based upon an alleged violation of an abstract constitutional right, unaccompanied by some other form of harm. See id. at 5-6 (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986) (Stachura)).[5] The district court agreed with the magistrate judge that Potthoff had not pled any damages other than a derivative claim for compensatory damages based upon economic harm suffered by ComReal. See id. at 6. Thus, the district court concluded that, "[b]ecause damages may not be recovered for the abstract value of a constitutional right, and Potthoff has not alleged any other cognizable damages, his claim under § 1983 must be dismissed for lack of standing as recommended by the magistrate judge." Id.

The district court therefore dismissed the claims against Morin and the Port Authority with prejudice pursuant to Fed. R. Civ. P. 12(c), and dismissed the claims against Hines and John Doe without prejudice pursuant to Fed. R. Civ. P. 4(m). See id. at 7. Judgment was entered accordingly, and Potthoff timely appealed.

---

[5]Potthoff sought only compensatory damages on his § 1983 claim. See Addendum to Brief for Appellant at 8-9 (complaint). No demand was made, nor was any argument presented, for nominal damages.

**Discussion**

We review a judgment on the pleadings *de novo*. National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir.), cert. denied, 510 U.S. 861 (1993). Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law. See id. (quoting Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters, 627 F.2d 853, 855 (8th Cir. 1980)). We must accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. See id.

"Article III of the United Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" Boyle v. Anderson, 68 F.3d 1093, 1100 (8th Cir. 1995) (citation omitted), cert. denied, 516 U.S. 1173 (1996). To acquire Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 209 (1962). To satisfy this requirement, the plaintiff must have "a definite and concrete controversy involving adverse legal interests at every stage in the litigation . . . for which the court can grant specific and conclusive relief." Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1992) (citing McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir. 1992)).

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction

therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.

Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (citations and internal quotation marks omitted). Additionally, under the prudential limits of the standing doctrine, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499. "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. at 501.

In the present case, Potthoff contends that the district court erred in granting Morin judgment on the pleadings on his claim pursuant to 42 U.S.C. § 1983. Potthoff maintains that, in dismissing his claim for lack of standing, the district court failed to accept as true all material facts pled in the complaint and to draw all reasonable inferences from the pleadings in his favor. Potthoff highlights the allegations in the complaint setting forth his personal financial losses and injuries. He also highlights the allegations describing Morin's ultimatum – that Potthoff must either recant and desist from criticizing the Mayor of St. Paul or suffer the termination of the Leasing Agreement. Pottfhoff contends that Morin's threat, coupled with the subsequent termination of the Leasing Agreement, not only deprived him of constitutional rights, but also caused him direct and personal injuries such as the loss of work and commissions and the immediate devaluation of his corporation. Potthoff thus argues that the district court mistakenly concluded that he failed to allege nonderivative damages apart from the pecuniary injuries suffered by ComReal and only alleged direct injury to himself based upon the deprivation of an abstract constitutional right. Potthoff additionally suggests that the present case is distinguishable from the shareholder cases

upon which the district court relied because, in those cases, the shareholder suffered no independent constitutional injury. By contrast, Potthoff argues, he has suffered a constitutional injury that is neither the same as, nor derived from, ComReal's injuries. Potthoff cites as precedent O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712 (1996) (district court erred in dismissing independent contractor's First Amendment claim against city, brought pursuant to 42 U.S.C. § 1983, where independent contractor alleged city terminated their longstanding contractual relationship in retaliation for contractor's political support of the mayor's opponent; holding that First Amendment protections afforded public employees may be extended to independent contractors).

In response, Morin and the Port Authority argue that the district court correctly dismissed Potthoff's § 1983 claim against Morin for lack of standing, and alternatively could have dismissed the claim based upon Morin's qualified immunity.

Upon careful *de novo* review, we agree with the district court's determination that Potthoff lacks standing to assert his § 1983 civil rights claim against Morin. Accordingly, we decline to address Morin's alternative qualified immunity argument.

"A corporation is an entity separate and distinct from its stockholders and its separate entity will generally be recognized." Bankers Life & Cas. Co. v. Kirtley, 338 F.2d 1006, 1013 (8th Cir. 1964). Generally, if a harm has been directed toward the corporation, then only the corporation has standing to assert a claim. In Brictson v. Woodrough, 164 F.2d 107, 109 (8th Cir. 1947) (footnotes omitted), cert. denied, 334 U.S. 849 (1948), our court adopted this shareholder standing rule and held that "[a]ctions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." See also Vanderboom v. Sexton, 460 F.2d 362, 364 (8th Cir. 1972) (determining that individual stockholders lacked standing to file suit on corporation's behalf). The shareholder standing rule applies even if the plaintiff is the sole

shareholder of the corporation.  See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 603 (6th Cir. 1988) (holding that an action to redress injuries to a corporation cannot be maintained by a stockholder in his or her own name, even where the individual is the sole stockholder) (citing cases).  In In re Dein Host, Inc., 835 F.2d 402, 406 (1st Cir. 1987), the First Circuit explained:

> The rule is a salutary one: if a shareholder, dissatisfied with the dealings entered into between his corporation and a third party, automatically possessed a personal right of action against the third party, then corporations would be paralyzed. They could rarely act except upon unanimous consent.  Business affairs would slow to a crawl, and the courts, confronted with a bewildering myriad of shareholder claims, would be as busy as a colony of centipedes with athlete's foot.

We hold that the shareholder standing rule applies to civil rights actions brought pursuant to 42 U.S.C. § 1983 by shareholders claiming injury to their corporations. Accord Gregory v. Mitchell, 634 F.2d 199, 202 (5th Cir. 1981) (extending shareholder standing rule to civil rights actions under § 1983) (citing cases); Erlich v. Glasner, 418 F.2d at 228 ("[E]ven though a stockholder owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual. . . . We find nothing in the Civil Rights Act which would permit [the plaintiff-stockholder] to circumvent the rule of law just stated, completely avoid the corporate entity and thus maintain an action in his own name.").

When Potthoff incorporated ComReal, he relinquished the right to seek direct legal redress under § 1983 for injuries suffered by him as ComReal's sole shareholder and principal employee. See Kush v. American States Ins. Co., 853 F.2d 1380, 1384 (7th Cir. 1988) (Kush) (corporate form confers many advantages, in return for which the shareholder relinquishes several prerogatives, "including that of direct legal action to redress an injury to him as primary stockholder in the business"). Potthoff "may not

-10-

move freely between corporate and individual status to gain the advantages and avoid the disadvantages of the respective forms." Id.[6]

Potthoff's § 1983 claim can survive only if he has alleged that he personally has suffered a direct, nonderivative injury. Flynn v. Merrick, 881 F.2d 446, 450 (7th Cir. 1989) ("Filing suit under 42 U.S.C. § 1983 does not diminish the requirement that the shareholder suffer some individual, direct injury."); Kush, 853 F.2d at 1383 ("Generally, courts allow a shareholder to sue only where there is a direct injury to the shareholder in his or her individual capacity, independent of any duty owed the corporation."). Potthoff insists that he pled such a direct, nonderivative injury because Morin directed the ultimatum at him personally, not at ComReal, in violation of his First Amendment rights. However, as the district court observed, it is well established that a claim based merely upon the deprivation of an abstract constitutional right is not justiciable unless a legally protectible interest is at stake. Stachura, 477 U.S. at 310.

In sum, even accepting as true all facts pled by Potthoff, and granting him the benefit of all reasonable inferences therefrom, the record does not reflect any cognizable injury to Potthoff that is distinct from the harm suffered by ComReal.

---

[6]O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712 (1996) (O'Hare), cited by Potthoff, does not contradict the application of the shareholder standing rule to Potthoff's claim. In O'Hare, the § 1983 claim at issue was brought by the independent contractor, O'Hare Truck Services, Inc. (the party directly affected by the termination of the contractual relationship in question) and the owner-operator of the company, John Gratzianna, *both* of whom were petitioners in the Supreme Court. See id. at 715. The issue before the Supreme Court was whether certain First Amendment protections afforded public employees extended to "independent contractors" (not whether Gratzianna had standing to sue on behalf of O'Hare). Id. at 716. The distinction between the company and its owner-operator for purposes of applying standing rules was neither raised nor discussed. Indeed, the Supreme Court at times simply referred to petitioners together as "O'Hare." See id. at 715.

Accordingly, upon *de novo* review, we hold that the district court properly dismissed Potthoff's claim under 42 U.S.C. § 1983 for lack of standing to sue under Article III.

## Conclusion

We need not address the remaining issues raised in this appeal. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.