**UNITED STATES of America,
Plaintiff,**

v.

**$244,320.00 IN UNITED STATES
CURRENCY, Defendant.**

**George Thomas, Claimant.**

No. 4:03–CV–40019.

United States District Court,
S.D. Iowa, Central Division.

Dec. 5, 2003.

Craig Peyton Gaumer, United States Attorney, Des Moines, IA, for plaintiff.

Maria Ruhtenberg, Des Moines, IA, Eric Honig, Honig Law Office, Marina Del Rey, CA, for claimant.

## ORDER GRANTING PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND STRIKING CLAIMANT'S PLEADINGS

GRITZNER, District Judge.

This matter is before the Court on Plaintiff's Motions for Judgment on the Pleadings (Clerk's Nos. 10 and 14) and Claimant's Motion for Judgment on the Pleadings (Clerk's No. 16). An oral hearing limited to the issue of standing was held by telephone conference call on November 6, 2003. Counsel of record for the Plaintiff is Assistant U.S. Attorney Craig Peyton Gaumer; attorneys for the Claim-

ant are Eric Honig and Maria Ruhtenberg. Based on the following, the Court grants Plaintiff's Motions for Judgment on the Pleadings. The Court strikes Claimant's claim and subsequent filings for lack of standing, thereby rendering Claimant's Motion for Judgment on the Pleadings moot.

## PROCEDURAL HISTORY

The Plaintiff, United States of America ("U.S.A." or "the Government"), commenced this action by filing a Verified Complaint in Rem ("Complaint") in this Court on January 15, 2003. The action seeks forfeiture and condemnation of specific property to the use and benefit of the U.S.A., namely U.S. Currency in the amount of $244,320.00 more or less ("Defendant currency"). Forfeiture of Defendant currency is based on its involvement in violations of 21 U.S.C. §§ 846 (attempt and conspiracy) and 841(a)(1) (prohibited acts), and/or violation of 18 U.S.C. § 1960 (prohibition of unlicensed money transmitting business). The action was brought in rem by Plaintiff to condemn Defendant currency under 21 U.S.C. § 881(a)(6) (forfeitures) and 18 U.S.C. § 981(a)(1)(A) (civil forfeiture).[1]

Jurisdiction over this action is proper in this Court under 28 U.S.C. §§ 1345 (United States as Plaintiff) and 1355 (fine, penalty, or forfeiture). In addition, venue is proper in the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. §§ 1355(b)(1) (fine, penalty, or forfeiture) and 1395(a), (b) (fine, penalty, or forfeiture) because the acts or omissions giving rise to the forfeiture occurred in the area covered by this district, and the property was brought into and remains within this district.

Claimant George Thomas ("Thomas") claimed and demanded restitution of the Defendant currency pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims on February 27, 2003. Thomas claims the right to defend this action as the holder of a possessory interest in the Defendant currency. Thomas also filed an Answer to the Complaint in which he asserts several affirmative defenses.

The Government filed a Motion for Judgment on the Pleadings ("J.O.P. Motion I") on July 21, 2003, in which it reserved the opportunity to raise the question of constitutional standing at a later date. It subsequently filed a second Motion for Judgment on the Pleadings and Judgment for Plaintiff ("J.O.P. Motion II") on July 31, 2003. In J.O.P. Motion II, the Government requests that Thomas' claim be stricken for lack of jurisdiction under Article III.

Thomas has resisted the Plaintiff's motions and has filed his own Motion for Judgment on the Pleadings ("Claimant's Motion"). These motions are currently pending before the Court. Plaintiff requested oral argument,[2] and a hearing was conducted via telephone on November 6, 2003.

## BACKGROUND FACTS

On the morning of February 20, 2002, Iowa State Patrol Trooper Ken Haas

---

**1.** Count I of the Verified Complaint in Rem is based on forfeiture under 21 U.S.C. § 881(a)(6) for Defendant currency's involvement in violations of 21 U.S.C. § 841 and/or § 846 et seq. Counts II and III of the Verified Complaint in Rem are based on forfeiture under 18 U.S.C. § 981(a)(1)(A) for Defendant currency's involvement in violations of 18 U.S.C. §§ 1960(b)(1)(B) (Count II) and 1960(b)(1)(C) (Count III).

**2.** Claimant opposed oral argument deeming it unnecessary. The Court, however, felt it was needed on the limited issue of Article III standing.

("Trooper Haas") was on duty in a patrol car facing east on I–80 near Council Bluffs, Iowa. At or about 10:44 a.m., the radar in Trooper Haas' patrol car recorded a white GMC Yukon ("the Yukon") heading west and traveling 67 miles-per-hour (mph) in a 55 mph zone. Trooper Haas turned his patrol car around and began pursuit of the Yukon. He stopped the Yukon at approximately 10:46 a.m. The Yukon had Michigan license plates registered to George David Thomas.

Thomas John Nix ("Nix") was driving the Yukon, and Marjorie Vicari ("Vicari") was a passenger in the vehicle. Trooper Haas exited the patrol car, walked to the shoulder of the road on the passenger side of the stopped vehicle, and engaged the passengers in conversation. Trooper Haas advised Nix and Vicari that he had stopped them for speeding (67 mph in a 55 mph zone) and asked Nix for his driver's license and vehicle registration. Nix provided Trooper Haas with a Florida driver's license. Vicari was also asked for identification, which she provided.

Vicari informed Trooper Haas that she had a letter from Thomas, the owner of the Yukon. The letter, dated February 19, 2002, said, "This letter confirms permission for my Aunt Marjorie Vicari, ... to use my vehicle 2002 GMC Yukon Vehicle Number 1GKFK16Z82J136605 for moving relocation. Should you have any questions please feel free to contact me at [phone number provided]."

Nix was asked to accompany Trooper Haas to the patrol car. Nix was asked whether he had any knives or weapons on him, which he denied. Trooper Haas inquired of Nix regarding his origin and purpose of the trip. Nix stated he grew up in Michigan but currently lived in Florida. He had flown to Michigan from Flori-

da and was headed to Las Vegas, Nevada, for a vacation that was to last three days. He further stated that Vicari was related to Thomas, he knew her because they were from the same town, and that he was a friend of her son. After the trip, he was planning on flying back to Florida.

Trooper Haas then returned to the passenger side of the Yukon to speak with Vicari. In response to questioning, Vicari stated she was on her way to Las Vegas to gamble. She said she was planning on staying for a week to ten days and would be lodging at the "Aladdin". Vicari stated Nix was a friend of her nephew and had come to Michigan from Florida to drive to Las Vegas with her.[3] Vicari told Trooper Haas that she did not like to fly and this was why Nix was with her. She also stated she intended to return to Michigan after the Las Vegas trip. Later, while waiting in Trooper Haas' patrol vehicle during a search of the Yukon, Nix claimed he was on his way to Las Vegas to stay at the "Palms" and not at the "Aladdin".

After returning to his patrol car to fill out paperwork to issue Nix a speeding ticket, Trooper Haas learned that Nix had previously been stopped by law enforcement officers in Iowa, during which stop he was found to be carrying approximately $51,000 in cash. This information was received in response to an inquiry made by Trooper Haas from the radio in his patrol car. After informing Nix that he was aware of the prior stop, Trooper Haas expressed doubt to Nix about the reasons provided for the trip from Michigan to Las Vegas and sought the true reason for the trip. Nix denied there was any prior stop and was unable to offer any new reasons for the current trip.

**3.** Plaintiff's Complaint states that Vicari said Nix "had driven up to Michigan from Flori-

da," and later states "Vicari did not know how Nix traveled from Florida to Michigan."

Trooper Haas then returned to the Yukon and asked Vicari if she had any guns, alcohol, marijuana, cocaine, methamphetamine, or large amounts of cash in the car. After Vicari denied having any of these items, Trooper Haas asked her for permission to search the vehicle. Vicari expressed concerns for her safety and was told she could wait in Trooper Haas' patrol car during the search. She then asked if she had to give consent and was told that she did not. Vicari attempted to ask Nix if she should sign the consent to search form but was advised that she did not need to ask him. Vicari then proceeded to sign the form.

The search of the Yukon began at approximately 11:25 a.m., with both Vicari and Nix waiting in Trooper Haas' patrol car. By this time, Trooper Miller had arrived at the scene and assisted with the search of the Yukon. The search began at the back of the vehicle and then proceeded to the front. As the search was being conducted, Trooper John Hitchcock arrived with his canine partner, Kevin. Kevin is a canine trained to alert to controlled substances. Kevin was deployed outside the vehicle at approximately 11:25 a.m. Kevin alerted to the scent of controlled substances while outside the vehicle and was subsequently deployed inside the Yukon where he immediately alerted to the odor of narcotics, with a firm indication toward the front of the vehicle. The canine's search of the vehicle concluded at approximately 11:29 a.m.

At approximately 11:32 a.m., Nix and Vicari were advised by Trooper Haas that he was suspicious of their purported activities because they told inconsistent stories that did not make much sense, that he had learned of Nix's prior involvement with law enforcement, and that the canine alerted to the presence of narcotics during the vehicle search. Trooper Haas further advised Nix and Vicari that, based on the foregoing, the Yukon was to be taken back to the patrol post for a more safe and thorough search. A trooper drove the vehicle to the Iowa Highway Patrol Station located a short distance away.

During the search at the patrol post, Trooper Todd Bentley found several bundles of U.S. currency located under the center console of the Yukon. The bundles were vacuum sealed and totaled $244,320.00. The wrench and screwdriver used to remove the thirteen bolts and screws holding the console in place were in the pocket of the driver's seat. During a discretionary search, a drug-dog alerted to the odor of narcotics on the currency. Both Nix and Vicari disclaimed any knowledge of the currency, though neither would sign disclaimer forms.

The Defendant currency was seized and taken into custody by the Iowa State Patrol at this time.[4] The seizure was adopted by the U.S. Drug Enforcement Agency ("DEA") on or about March 1, 2002, and the State turned over the Defendant currency for the purposes of forfeiture proceedings under federal law. Beginning on or about April 1, 2002, notice was published in the Wall Street Journal. The DEA also sent notice of the forfeiture

---

4. In addition to the facts related, Plaintiff also states in its Complaint in order to justify the seizure of the Defendant currency:

 63. A drug-dog alerted to the odor of narcotics on the currency during a discretionary search.

 64. The proceeds of, or money used in, the distribution of controlled substances is frequently placed in vacuum-sealed bags in an effort to conceal the odor of drugs from detection.

 65. Dealers of illegal controlled substances typically transport money used in their business behind the existing paneling and compartments of automobiles, in an effort to conceal the money from detection.

to interested parties on April 10, 2002.[5] When it was unable to determine to whom the original notice had been delivered, the DEA resent notice to Thomas on or about September 13, 2002. On or about October 16, 2002, the DEA received a "Claim in Administrative Forfeiture Proceedings" from Thomas. In his claim, Thomas alleged a possessory interest in the Defendant currency. It is based on this possessory interest that Thomas has entered this forfeiture action as the sole claimant of Defendant currency.

## ANALYSIS

■ Forfeitures are not generally favored by the courts. *United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minn.*, 294 F.3d 954, 958 (8th Cir.2002); *see also United States v. One 1936 Model Ford V–8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939). Consequently, they should be enforced according to the letter and spirit of the governing provisions. *1936 Model Ford V–8*, 307 U.S. at 226, 59 S.Ct. 861. Historically, forfeiture statutes have been strictly construed against the government. *See, e.g., United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir.1994). In this action, the Government seeks civil forfeiture of Defendant currency on the basis of two forfeiture statutes, 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

### A. Standard for Judgment on the Pleadings

■ Each of the parties has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Judgment on the pleadings is only appropriate when the moving party has clearly established no material issue of fact remains and that it is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir.2002); *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir.2001). Under this strict standard, the court must accept as true all of the facts pleaded by the non-moving party. *Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir.1996). In addition, the court must "grant all reasonable inferences from the pleadings in the favor of the non-moving party." *Potthoff*, 245 F.3d at 715 (citing *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir.), *cert. denied*, 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993)); *see also Lion Oil Co.*, 90 F.3d at 270. The court cannot, however, accept a party's unsupported conclusions or interpretations of law. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992) ("a reviewing court is obliged neither to 'credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' ... nor to honor subjective characterizations, optimistic predictions, or problematic suppositions.") (citations omitted).

■ When considering a motion for judgment on the pleadings, a court generally must consider only those materials in the pleading. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999). The court may, however, consider materials that are part of the public record and do not contradict the pleadings, as well as those materials that are necessarily em-

---

**5.** 18 U.S.C. § 983(a)(1)(A)(iv) requires that notice of forfeiture be sent to all interested parties within 90 days of receipt of the property for the purpose of forfeiture. The DEA complied with this statutory requirement in sending out notice on April 10, 2002, well within 90 days from the time the State turned Defendant currency over to the DEA.

braced by the pleadings. *Id.* (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir.), *cert. denied,* 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), and *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.,* 967 F.Supp. 1148, 1152 (D.Minn.1997)). *See also Hatch v. TIG Ins. Co.,* 301 F.3d 915, 916 n. 2 (8th Cir.2002) (citing *Porous Media Corp.* and allowing consideration of materials not attached to the pleadings because they were referenced and relied on in the pleadings or were public records); 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 299 (1990) ("matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered by the court in a motion for judgment on the pleadings).

**B. Plaintiff's Motions for Judgment on the Pleadings**

In J.O.P. Motion I, the Government moved for judgment on the pleadings regarding two of the affirmative defenses asserted by the Claimant in his Answer. The Government contends that as a holder of only a possessory interest in Defendant currency, Thomas cannot assert the innocent owner defense. The Government also contends that a claimant asserting a possessory interest is not entitled to the protections of the Excessive Fines Clause of the Eighth Amendment. In his response to J.O.P. Motion I, Thomas concedes that the innocent owner defense is not available to him as he has not claimed an ownership interest in the Defendant currency as it is defined in this provision of CAFRA, but still contends that he may, as a claimant with a possessory interest, raise an Excessive Fines Clause argument against the potential forfeiture of Defendant currency.

In J.O.P. Motion II, the Government moves for judgment on the pleadings based on Claimant's lack of standing. The Government argues that a claimant who holds only a possessory interest in property allegedly subject to forfeiture, and not ownership, cannot prevail in a federal civil forfeiture action. The Government requests that Thomas' claim be stricken for lack of jurisdiction under Article III and further seeks judgment entered in its favor. Thomas counters by claiming a possessory interest is sufficient to establish standing.

■■ A forfeiture action is an in rem proceeding against the seized property. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–84, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (discussing the nature and history of forfeiture actions). "The underlying purpose of the forfeiture statutes is to deter future wrongdoing." *United States v. One (1) 1976 Cessna Model 210L Aircraft,* 890 F.2d 77, 79 (8th Cir.1989) (citing *Calero–Toledo,* 416 U.S. at 684, 94 S.Ct. 2080). A claimant needs to demonstrate that he or she has standing in order to contest an action in forfeiture. *Id.* at 79–80. There are two types of standing the claimant needs to demonstrate, Article III standing and statutory standing. *See United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir. 1999) ("In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court.").

**1. Article III Standing**

Article III of the Constitution limits the power of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2. "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). "[W]hen standing is placed in is-

sue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). A proper litigant must have " 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues. . . .' " *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)); *see also Sierra Club v. Morton* 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (finding litigant must possess "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy").

■ The constitutional requirements for standing have been summarized by the Supreme Court as follows:

[A]t an irreducible minimum, Art. III requires the party who invoke's the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

*Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Thus, Article III standing requires a plaintiff or claimant show an injury in fact, causation by the challenged action, and a judicial remedy.

*Id.; see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); *Defenders of Wildlife, Friends of Animals & Their Env't v. Hodel,* 851 F.2d 1035, 1038–44 (8th Cir.1988) (stating requirements for Article III standing).

■ "Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013 (8th Cir.2003); *see also United States v.1998 BMW "I" Convertible,* 235 F.3d 397, 399 (8th Cir. 2000) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Standing is an issue of law that should be decided by the court, *United States v. $57,790.00 in U.S. Currency,* 263 F.Supp.2d 1239, 1241 (C.D.Cal.2003), and "judicial economy requires that the court decide the issue at the commencement of the litigation rather than deferring until trial." *1998 BMW,* 235 F.3d at 399 (citing *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990)).

### 2. Standing to Contest Forfeiture

"In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." *One Lincoln Navigator,* 328 F.3d at 1013; *see also 1998 BMW,* 235 F.3d at 399 ("At the outset, a claimant must be able to show a facially colorable interest in the proceedings sufficient to satisfy Article III standing; otherwise, no constitutional case or controversy exists capable of federal court adjudication."). Thereafter, "[a]n individual having a sufficient legal interest in the seized property can contest the forfeiture. . . ." *United States v. One Parcel of Property Located at Tracts 10 & 11 of*

*Lakeview Heights, Canyon Lake, Comal County, Tex.,* 51 F.3d 117, 119 n. 5 (8th Cir.1995); *see also United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 647 F.2d 864, 866 (8th Cir.1981) (*"Douglas II"*) ("To contest a forfeiture, one must have an ownership interest in the res.").

■ The burden is on the claimant to establish standing. *See United States v. $321,470.00, U.S. Currency,* 874 F.2d 298, 302 (5th Cir.1989); *Mercado v. U.S. Customs Serv.,* 873 F.2d 641, 644 (2d Cir.1989). The burden to meet the requirements for Article III standing is not rigorous. *One Lincoln Navigator,* 328 F.3d at 1013. "To manifest standing in the forfeiture context, a claimant must first show an ownership interest in the property." *1998 BMW,* 235 F.3d at 399; *see also United States v. One 1990 Chevrolet Corvette,* 37 F.3d 421, 422 (8th Cir.1994); *United States v. Ford 250 Pickup 1990,* 980 F.2d 1242, 1246 (8th Cir.1992); *1976 Cessna Model 210L Aircraft,* 890 F.2d at 79–80.

■ The claimant does not need to prove the underlying merits of the claim to have standing. *7725 Unity Ave.,* 294 F.3d at 957 (citing *United States v. $515,060.42 in U.S. Currency,* 152 F.3d 491, 497–98 (6th Cir.1998)). "The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." *Id.* In the Eighth Circuit, "a colorable ownership interest 'may be evidenced in a number of ways, including showings of actual possession, control, title and financial stake.'" *One Lincoln Navigator,* 328 F.3d at 1013 (quoting *Douglas II,* 647 F.2d at 866); *see also 7725 Unity Ave.,* 294 F.3d at 956; *1998 BMW,* 235 F.3d at 399; *1990 Chevrolet Corvette,* 37 F.3d at 422.

"Courts generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it." *United States v. U.S. Currency, $81,000.00,* 189 F.3d 28, 35 (1st Cir.1999) (citing *$321,470.00,* 874 F.2d at 303–04, and *United States v. $122,043.00 in U.S. Currency,* 792 F.2d 1470, 1473 (9th Cir.1986)). In a civil forfeiture proceeding, a claimant with a colorable ownership or possessory interest generally will have standing because "an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *$515,060.42,* 152 F.3d at 497; *see also Cambio Exacto,* 166 F.3d at 527.

■ Based on the foregoing, a claimant must claim a facially colorable interest in the seized property in order to have standing to contest the forfeiture under Eighth Circuit jurisprudence. While the Eighth Circuit has not dealt expressly with what level of possessory interest is sufficient to meet this standard, other federal courts have dealt with the issue. These decisions, while not controlling, along with Eighth Circuit jurisprudence, do provide the Court with a good indication of what interest is considered sufficient for standing to contest a forfeiture.

Ownership can be evidenced in a variety of ways. *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir. 1992). "Courts generally look to indicia of dominion and control such as possession, title, and financial stake." *Id.* However, "[t]he possession of bare legal title to the res may be insufficient to establish ownership." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 604 F.2d 27, 28–29 (8th Cir.1979) (*"Douglas I"*); *cf. One Lincoln Navigator,* 328 F.3d at 1013 (finding claimant had Article III standing even though there was evidence that she had only bare legal title, concluding "that is sufficient to confer Article III standing to contest the forfeiture").

"Broadly speaking, ownership may be defined as having a possessory interest in

the res, *with its attendant characteristics of dominion and control."* *Douglas I*, 604 F.2d at 28 (emphasis added). While "ownership" of personal property is susceptible to a broader definition than "ownership" of real property, *Tracts 10 & 11 of Lakeview Heights,* 51 F.3d at 121, such that it includes having a possessory interest, that possessory interest must include dominion and control of the property. *Douglas I,* 604 F.2d at 28. "A nominal owner who lacks possession of the defendant property and did not exercise dominion and control over it does not have an interest sufficient to have standing to challenge forfeiture." *1990 Chevrolet Corvette,* 37 F.3d at 422. Moreover, "possession of the defendant property, without more, is insufficient to confer standing if there are serious reasons to doubt the claimant's right to the property.... This is particularly true where the claimant *denies* legal ownership to seized currency, but nevertheless seeks standing to contest the forfeiture." *$38,750.00,* 950 F.2d at 1113 n. 5 (internal citations omitted).

While the most obvious interest that constitutes a colorable claim sufficient to confer standing is an ownership interest, "[a] property interest less than ownership may also be sufficient to create standing." *$515,060.42,* 152 F.3d at 498; *see also $191,910.00 in U.S. Currency,* 16 F.3d at 1057 ("In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest."); *United States v. $57,790.00 in U.S. Currency,* 263 F.Supp.2d 1239, 1241 (S.D.Cal.2003) ("It is clear that ... an individual with an ownership interest has standing to challenge a forfeiture.... Moreover, an individual with a possessory interest in the property will have standing if that interest is explained.") (internal citations omitted).

"Possessory interests may be sufficient to bestow standing on a claimant to contest a forfeiture." *$515,060.42,* 152 F.3d at 498 and cases cited therein. "However, ... 'naked possession' claims are insufficient to establish standing." *Id.* "Possession ... means more than mere custody." *Mercado,* 873 F.2d at 644. " 'Possession' denotes custody plus a right or interest of proprietorship, *i.e.,* a domination or supremacy of authority over the property in question." *Id.* at 644–45 (citations omitted). In addition, " '[p]ossession' requires a knowledge of presence and an intent to control." *Id.* at 645 (citing *United States v. Wells,* 721 F.2d 1160, 1162 (8th Cir. 1983), and *United States v. Nitti,* 444 F.2d 1056, 1060 (7th Cir.1971)).

 In addition, the property interest asserted must be in the defendant property and not merely an interest in the premises where the contraband was found. *See, e.g., United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) U.S. Currency,* 558 F.2d 1359, 1361 (9th Cir.1977) (finding claimant's possessory interest in safety deposit box insufficient to confer standing to contest forfeiture of money seized from the box where she did not claim any interest in the money other than that which would result from her interest in the box).

"When confronted with mere physical possession of property as a basis for standing, [courts] require some explanation or contextual information regarding the claimant's relationship to the seized property." *$515,060.42,* 152 F.3d at 498; *see also $38,570,* 950 F.2d at 1113 ("Ordinarily, ... a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture."); *$321,470.00,* 874 F.2d at 301, 304 (finding a courier carrying cash from an unknown owner to an unknown recipient (raising

inference of a mule of drug traffickers) must be prepared to demonstrate a *lawful* possessory interest). Thus, "an individual with a possessory interest in the property will have standing *if that interest is explained.*" *$57,790.00*, 263 F.Supp.2d at 1241 (emphasis added). "[W]here a claimant asserts a possessory interest *and provides some explanation of it* (e.g., that he is holding the item for a friend), he will have standing." *$191,910.00*, 16 F.3d at 1058 (emphasis added).

"A claimant need not explain this interest in detail, however, so long as he does something more than conclusorily state that he has some undefined 'interest.'" *$191,910.00*, 16 F.3d at 1057; *see also United States v. Eighty Three Thousand, One Hundred and Thirty–Two Dollars ($83,132.00) in U.S. Currency*, 1996 WL 599725, *2 (E.D.N.Y.) ("the simple assertion of an interest in or ownership of forfeited property, if unsupported by additional evidence and by a valid legal theory, is insufficient to establish standing.") (citing *United States v. New Silver Palace Restaurant, Inc.*, 810 F.Supp. 440 (E.D.N.Y.1992)). The explanation should, however, include "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *$515,060.42*, 152 F.3d at 498. "There must be some indication that the claimant is in fact a possessor, not a simple, perhaps unknowing custodian, some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim." *Mercado*, 873 F.2d at 645. In addition, while "possession is evidence of standing, the ultimate focus of any standing inquiry is injury." *United States v. Portrait of Wally, A Painting By Egon Schiele*, 2002 WL 553532, *6 (S.D.N.Y.) (citing *Cambio Exacto*, 166 F.3d at 527).

While " '[i]t is clear that anyone with an ownership or possessory interest in at least a portion of the property may file a claim and answer[,]' " *$321,470.00*, 874 F.2d at 303–04 (quoting Smith, Prosecution and Defense of Forfeiture Cases, ¶ 9.04(2)(a), at 4–54 (1988)), courts have qualified this "by requiring that the possessory interest be a colorably lawful interest in the property." *Id.* at 304; *see Mercado*, 873 F.2d at 645 ("Because there is a substantial danger of false claims in forfeiture proceedings, ... more was required than the conclusory, hearsay, on-information-and-belief statement of [the claimant's] lawyer.") (internal citations omitted). "Congress certainly had no intention of elevating naked possession into equitable ownership in circumstances pointing to the likelihood that the possessor was a courier of drug money." *$321,470.00*, 874 F.2d at 303; *see Mercado*, 873 F.2d at 645 ("a naked claim of possession ... is not enough" for standing to contest a forfeiture). In other words, "the claimant must come forth with *some* evidence of his ownership interest in order to establish standing to contest a forfeiture." *$38,570*, 950 F.2d at 1112.

The Government does accept and the Court notes that a bailee may potentially make a claim in a forfeiture action or otherwise assert the rights of the owner of the property subject to forfeiture.[6] The possessory interest of a bailee of seized currency is sufficient to be a claimant with standing to contest a forfeiture. *See, e.g., $321,470.00*, 874 F.2d at 304 ("No one can question the standing of

---

**6.** In addition, a person can litigate the rights of another if (1) the litigant suffered an injury in fact; (2) the litigant had a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

a bailee or agent to attack a forfeiture of property subject to a lawful or even colorably lawful bailment or agency."); *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir.1987) ("as a bailee, [a claimant] has a possessory interest in the bailed currency, ... and consequently may assert a claim to the currency against anyone, other than the bailor, who interferes with that interest") (internal citations omitted); *United States v. U.S. Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty–Three Dollars, More or Less*, 1999 WL 458155, *6 (E.D.N.Y.) ("In the context of civil forfeiture actions, courts have widely held that the bailee of seized currency possess a sufficient stake in the currency to have Article III standing."). However, if asserting a possessory interest as a bailee, that designation must be pleaded by the claimant.[7]

■ Based on the foregoing, a claimant that asserts a possessory interest must do more than state that interest in a conclusory fashion. Otherwise, the court may strike the claim for lack of standing. *See, e.g., United States v. Twenty One Thousand Two Hundred Eighty–Two Dollars, in U.S. Currency*, 47 F.3d 972, 973 (8th Cir.1995) (noting that district court struck for lack of standing the claims and answers of a claimant as to a truck and currency in which he asserted a "possessory interest" and that this finding was not contested on appeal); *Tracts 10 & 11 of Lakeview Heights*, 51 F.3d at 121 (finding possession of real property, even when coupled with an expectancy interest, when lacking any indicia of title or adequate proof of a financial stake is insufficient for ownership needed to contest a forfeiture action). The claimant needs to provide some explanation of the interest for it to qualify as a colorable possessory interest sufficient to establish standing. *See 1998*

*BMW*, 235 F.3d at 399; *see also $515,060.42*, 152 F.3d at 498; *$191,910.00*, 16 F.3d at 1058; *$38,570*, 950 F.2d at 1113; *$321,470.00*, 874 F.2d at 304; *$57,790.00*, 263 F.Supp.2d at 1241. Merely stating that the claimant has a possessory interest is not enough. *See, e.g., $321,470.00*, 874 F.2d at 303–05 (finding that where claimant is unwilling or unable to provide any evidence supporting his assertion that he has a lawful possessory interest in the money seized then he has failed to carry his burden of proof that he has standing to claim the seized property or contest the forfeiture); *Mercado*, 873 F.2d at 644 ("The conclusory and factually unsupported statement of [claimant's] attorney that [claimant] was 'in possession' of the money does not suffice to give [claimant] standing"); *United States v. $600,000.00 in U.S. Currency*, 871 F.Supp. 1397, 1400 (D.Kan. 1994) (holding claimant's bare allegation that defendant currency was found in the trunk of a car he was driving was insufficient to establish standing); *cf., e.g., $515,060.42*, 152 F.3d at 500–01 (finding that even though claimants could have produced more concrete evidence of ownership or possession, the fact that the currency was found in one of the claimant's bedrooms gave him constructive possession of the currency even though not present at the time of the seizure, and "such a possessory interest is constitutionally sufficient to confer standing in forfeiture actions"); *United States v. $260,242.00 U.S. Currency*, 919 F.2d 686, 687 (11th Cir. 1990) (finding standing existed for a claimant on the basis of constructive possession where the currency was seized from the trunk of a car registered to the claimant).

The Court finds a substantial body of law that requires some additional showing beyond the allegation of a possessory interest in order to establish standing. That

***

**7.** *See* Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

showing may not be a heavy burden, but it is a burden nonetheless. The Court is not here required to quantify this burden, as the claimant offers no further explanation. The bald assertion of a possessory interest provides the Court no basis upon which to analyze, much less determine, standing.

In his Claim, Thomas claims and demands restitution and return of the Defendant currency as the holder of a possessory interest in the Defendant currency. At no time does Thomas expand on his claim as the holder of a *possessory interest*. He makes no claim that he is acting as an agent or bailor, or that his possessory interest arises out of another's ownership interests, but instead seems to be asserting a personal possessory interest in Defendant currency. Furthermore, Thomas was not in possession of the Defendant currency at the time it was seized by the Iowa State Patrol. The sole fact that seems to give rise to Thomas' possessory interest, at least the only one that can be gleaned from the parties' filings in this action and the only fact referred to by the Claimant in oral argument, is that the Defendant currency was found inside his Yukon, and the driver and passenger of the Yukon have disclaimed any ownership or other interest in the money. Thomas claims this simple assertion is sufficient for the Court to find he has Article III standing to contest this forfeiture.

Based on the foregoing discussion, and the facts as presented, the Court finds Thomas lacks Article III standing to contest this forfeiture. In the Eighth Circuit, a claimant must have a colorable ownership or possessory interest to have standing in civil forfeiture action. Thomas has alleged no *colorable* possessory interest but has simply asserted he has some undefined possessory interest in Defendant currency that gives rise to his right to contest this forfeiture. Lacking from his claim are any indications of actual possession, do-minion, control, title, or financial stake in the Defendant currency. Likewise, Claimant provides no explanation of how the property came into his possession or his relationship to Defendant currency so as to provide some indication of the reliability of his claim. Even in *United States v. $191,910.00 in U.S. Currency,* the authority Thomas stresses most heavily in making his arguments that he does have standing, the court required some additional explanation of the possessory interest being claimed. *See $191,910.00,* 16 F.3d at 1058. This required additional explanation is lacking here.

Thomas also fails to plead to the Court what injury he will suffer if the Defendant currency is indeed forfeited through these proceedings. Thomas' claim that he is a holder of a possessory interest is more akin to the possessory interest asserted by the claimant in *United States v. Fifteen Thousand Five Hundred Dollars ($15,-500.00) U.S. Currency,* where the possessory interest was in the safety deposit box where the currency at issue was found and seized from and not in the currency itself. *See $15,500.00,* 558 F.2d at 1361. Notwithstanding Thomas' undisputed ownership of the Yukon, the receptacle of Defendant currency, he has not pleaded a possessory interest sufficient for Article III standing. Ownership of the Yukon, which at the time was out of his control and entrusted to another, is insufficient to give Thomas Article III standing to contest the forfeiture of Defendant currency. Thomas must also have a possessory interest in the property at issue in the civil forfeiture action.

In short, Thomas has pleaded nothing more than a naked claim of possession. He admits his claim is not based on "ownership," but rather on "possession." Thus, Claimant's simple and unexplained assertion of a possessory interest in the Defendant currency fails to provide him with the

required foundation for Article III standing to contest this forfeiture. For these reasons, the Court must grant the Government's request to strike Thomas' pleadings from the record for lack of standing.

## C. Claimant's Motion for Judgment on the Pleadings

In addition to resisting the Government's two motions for judgment on the pleadings, Thomas has himself moved for judgment on the pleadings for the Claimant. However, if the Claimant lacks standing to challenge the forfeiture, the Court does not need to consider the merits of his claim that the Government failed to meet its burdens in seizing the Defendant currency. *See 1990 Chevrolet Corvette,* 37 F.3d at 422–23. In finding Thomas lacks standing and in light of the Court's ruling striking his pleadings, Claimant's Motion for Judgment on the Pleadings is rendered moot.

## CONCLUSION

Based on the foregoing discussion and analysis, the Court **strikes** Thomas' claim to Defendant currency for lack of standing, making it unnecessary for the Court to rule on Claimant's Motion for Judgment on the Pleadings. In addition, the Court hereby **grants** the Government's Motion for Judgment on the Pleadings (J.O.P. Motion II) and orders judgment for the Plaintiff. The Court further orders Defendant currency to be forfeited to the United States.

**IT IS SO ORDERED.**